221
10....417
11....377
15....295
42....321
45....668
50....162
56....35

LESTER H. COTTON & MICHAEL W. HIGGINS, Plaintiffs in Error.

*vs.*

S. C. MARSH & ALEX. FREAR, Defendants in Error.

ERROR TO THE MILWAUKEE CIRCUIT COURT.

Under the provisions of the ninth section, of chapter 76 of the Revised Statutes, to render a chattel mortgage valid as against others than the parties thereto, one of three things is necessary to be done:

    1st. That possession be delivered to, and retained by, the mortgagee; or,

    2d. That the mortgage be filed in the office of the town clerk in which the mortgagor resides; or,

    3d. In case the mortgagor does not reside in this State, that the mortgage be filed in the office of the town clerk in the town in which the mortgaged property is, at the time of the execution of the mortgage.

The filing of the mortgage, in accordance with the provision of the Statute, is equivalent to a change of possession, and relieves the party claiming under the mortgage from the *onus* of proving the *bona-fides* of the transaction.

Where the mortgagee, in pursuance of a power contained in a mortgage, takes possession of the mortgaged property, and then puts the mortgagor back in possession, with instructions "to go on and sell as usual, and make remittances to the mortgagee," such transaction is not necessarily fraudulent, but may properly be left to the jury with all the other circumstances of the case, in determining the question of fraud.

The marshal is liable in civil cases for the acts of his deputy done *colore officii*, and may be sued jointly or separately like other tort-feasors.

A mortgagor of chattels has an interest in the mortgaged property, until it is extinguished by foreclosure, which may be seized and disposed of by his creditors, but such interest is subservient to the paramount interest of the mortgagee.

The interest of the mortgagee is, to have the property converted or applied to the satisfaction of his demand, and subject to this right the creditor of the mortgagor may attach the property.

The creditor of the mortgagor of personal property cannot deprive the mortgagee of his possession or his right of possession so as to control and dispose of the property regardless of such right.

This was an action of trover, commenced by the defendants in error against the plaintiffs in error, for the conversion of certain goods specified in the plain-

June Term 1854.

Cotton et al
vs.
Marsh et al.
tiffs' declaration. The issue joined between the parties came on to be tried by a jury at the September Term, 1853. On the trial, the plaintiffs produced A. B. Gates as a witness, who testified that he was town clerk of the town of Grafton, Washington county, and was elected the spring preceding; and that he found on file a chattel mortgage from himself to the plaintiffs, which he produced. Jacob T. Adriance was town clerk at the time of the execution of the mortgage, and J. C. Downs was his deputy. The certificate of the filing the mortgage was in the handwriting of Downs; the mortgage was upon goods and merchandise in a store occupied by witness, in Grafton, at the time of its execution. At the time of the execution of the mortgage, witness did not know of the rendition of a judgment against him in the United States Court; he had never been served with process. A Mr. Croes, the agent of the plaintiffs, and one Turner, a lawyer, were present; Turner or Croes took the mortgage to the town clerk to be filed. When the mortgage was executed, Croes took possession of the goods under the mortgage for the plaintiffs. After he returned from the town clerk's office he said the goods were his, but that witness might take care of them; that he would put witness back into possession of the goods for Marsh & Frear, and that the witness should go on and sell as usual, and make remittances to Marsh & Frear. Previous to giving the mortgage, the witness had possession of the goods, and it was executed to secure a debt due to Marsh & Frear, at the request of Croes, their agent. The mortgage was then offered and received in evidence.

It was also proved on the part of the plaintiff, that

in January, 1852, the defendant, Higgins, took the goods from the possession of Gates, stored them at Grafton a few days, in another building, and then removed them to Milwaukee, to Wall's auction room, where they were sold. At the time of taking the goods, Higgins was informed of the mortgage. Higgins took the goods as deputy of Cotton, U. S. marshal, by virtue of an execution issued out of the District Court of the U. S. for the district of Wisconsin, upon a judgment in favor of Ralph Clark and Frank Work against A. B. Gates and others, for $1652.00 and costs.

The return of Higgins upon the writ was proved to be in his hand writing, dated January 10, 1852, certifying to the fact of the levy made by him upon the goods.

The goods were sold under the direction of the marshal Cotton, for about $700.00

The evidence being closed, the counsel for the defendants, in writing, requested the court to instruct the jury as follows, viz:

*First*, That if the jury find that the mortgage to the plaintiff in this case was payable on demand, and the mortgagor was entitled to the possession until default of payment, that then default of payment cannot be presumed before the levy was made; and if there had been no such default by a demand in fact, at the time of the levy, and the refusal to deliver the goods upon demand made by the defendants before suit brought, then the plaintiffs had no such possession, or right of possession, of the property, as entitles them to maintain this action.

*Second*, That if the jury find that if immediately upon the filing of the chattel mortgage, the mort-

June Term
1854.

Cotton et al
vs.
Marsh et al.

gagor was put back into the possession of the goods, with authority to sell as usual, that then the mortgage is void against the creditors of the mortagor.

*Third*, That if the jury find that the mortgagor was a country merchant, and mortgaged his goods to mortgagees of a foreign State, and was permitted to retain possession and continue his business in the usual way, and make remittances to the mortgagees, that these are such unmistakable badges of fraud, and of an intention to hinder and delay creditors, as render the transaction fraudulent in law, and void by the statute of this State.

*Fourth*, That if the jury find that the mortgagor was in possession of the goods, with authority to sell as usual, or with power to merchandize with them, that then an execution creditor of the mortgagor, by a levy, would acquire as good a right to the goods, as against either the mortgagor or mortgagee, as, first, a purchaser; secondly, a purchaser from the mortgagee; and thirdly, as a purchaser from the mortgagor and mortgagee both would.

*Fifth*, That if the jury find that the mortgagor was permitted to retain possession of the goods, or was authorized to sell them as usual, in the course of trade as merchant, or that he was mortgagor and agent of mortgagee for the sale of the goods—first, all these circumstances; and secondly, either of them, is presumptive evidence that the mortgage was fraudulent, and unless rebutted by proof that the mortgage was made in good faith, and without any intention to defraud creditors, is conclusive evidence that the mortgage is fraudulent and void, and the jury must find for the defendant.

*Sixth*, That if the jury find that the levy was made

by a deputy of the marshal, and that the marshal was
only by relation of his office an actor in the alleged
tort, then this action cannot be maintained against
both the marshal and such deputy.

*Seventh*, That if the jury find that at the time of
the execution of the mortgage, or immediately there-
after, and at the time of the taking, the plaintiffs, or
their agent, directed the mortgagor to go on selling as
usual, and he had the custody of the goods for that
purpose,—that then he had such an interest in the
goods as was subject to seizure and sale on execution,
and this action cannot be maintained, and defendants
are not liable for seizing and taking the same.

*Eighth*. That if the jury find that the mortgagor
was left or put in the possession of the goods to dis-
pose of them as a merchant, and being so in possession
of them, the defendants took them upon the levy of
an execution upon a valid judgment against the mort-
gagor, that then the plaintiff is not entitled to recover
in this suit.

To all which the court instructed the jury to the
contrary, and the counsel for the defendants did ex-
cept.

The court instructed the jury as follows : "The plain
tiffs in this case claim to recover of the defendants,
or some of them, the value of the stock of goods
concerning which you have had evidence. To sus-
tain their action, the plaintiffs must show both prop-
erty in the goods and possession, or the right of
possession, at the time of the alleged conversion by
the defendants. The plaintiffs claim property under
a chattel mortgage, which has been produced in evi-
dence. That instrument is sufficient for that purpose.
They claim also, as I understand the counsel, that the

mortgage on its own face shows a right of possession in the mortgagees. I think not. They claim also that they had possession in fact. They claim that after Gates gave the mortgage, and after it was carried (as Gates supposed) to the town clerk's office, there was a surrender of the possession by Gates to Mr. Croes, who acted for the mortgagees, and that then he placed Gates back into the possession as an agent of the mortgagees, with authority to go on selling the goods and to remit the proceeds to the mortgagees. It was as competent for Mr. Gates to become agent for the mortgagees as for any one else to do so. It is for you to determine whether this change of possession was made. You have the testimony of Mr. Gates on the subject, and no other person I believe, and Mr. Gates stands uncontradicted, and therefore is to be credited, unless you discover something in the nature of the testimony which throws doubt upon it. This is an important fact in the case, because the plaintiffs must make out this change of possession to entitle them to bring their suit. You have heard the testimony and comments of counsel, and you must judge for yourselves. Should you find that there was a change of possession, as claimed by the plaintiffs, then you will enquire further whether the defendants have taken and converted the goods in question. It is claimed that the defendant Higgins, on or about the 10th day of January, 1852, seized the goods and took them into his possession and did not return them. The fact of his taking, I believe, is not disputed, and so far the plaintiffs' case is fully made out in respect to Higgins. But the defendants contend that Higgins was justified in taking and converting the goods because he had in

his hands an execution out of the United States

Court. This execution is in evidence with the return of the officer thereon. It was sufficient to authorize the officer to levy upon the property of Gates or upon his interest in any property which he owned as a partner, mortgagor or pledgor.

The property which he did levy upon was clearly subject to a mortgage, and if that was valid and legal in respect to creditors, then his levy was wrong. His return shows, as well as the testimony of Mr. Gates, that he seized the goods themselves, and not the right or interest of the mortgagor in the goods. The justification of the officer, therefore, must rest upon one of two grounds—either that the plaintiffs have failed to show a right to bring this suit, or that the mort-gage in question was not valid as to creditors. I have already told you that the right of the plaintiffs to maintain the action, rested upon their showing a possession of the goods under the mortgage. Now does it appear that the mortgage in question was not valid as to creditors?

The defendant claims, 1st, that it was not legally filed; 2d, that the fact that Gates, the mortgagor, was left in possession, makes it fraudulent as to creditors; 3d, that the whole transaction of the mortgage was fraudulent because it was designed to hinder and delay creditors. First, as to the filing of the mort-gage. I am satisfied that the evidence shows enough, if you believe it, to establish a legal filing. Mr. Gates swears that he is town clerk of the town of Grafton; that he found this mortgage on file in the office when he came into it; that the endorsement on the back was in the hand-writing of the person whose name is subscribed to it, which he knows; and that this per-

June Term
1854.

Cotton et al
vs.
Marsh et al.

son was acting deputy town clerk at the time the filing purports to have been made. This I say, if you believe it, makes out a legal filing, and the effect of it in law was to notify all the world that this lien existed upon the goods described in it. If there was no fraud in fact in the giving of the mortgage, this mortgage being fair on its face, was valid in respect to creditors, and the officer in this case, with his execution, was authorized to levy only upon the interest of Gates, the mortgagor in the goods, not upon the goods themselves. Having exercised his right to levy on the interest of the mortgagor, he might have taken all the goods into his possession and might have held them and had them present before purchasers when he sold that interest on advertisement. But that interest should have been sold as an entirety; it would not have been a sale of this article or that, subject to the mortgage, but it would have been a sale of the whole in bulk, subject to the mortgage, and then the officer must have retained possession of the whole until the purchaser first paid the amount secured by the mortgage, and then paid him the balance or surplus to apply on his execution. Inasmuch as the return of the officer shows that he levied on the goods and not on the interest of Gates in them, if the mortgage was valid as to creditors, then this levy and the taking of the goods under it constituted an illegal act for which the writ furnished no justification.

Again, the defendants claim that this mortgage and the transactions connected with it, was a proceeding, device or contrivance to hinder and delay the creditors of Gates. On this subject you are to judge from all the proofs before you. While on the one hand it is perfectly legal for a debtor to pay or secure one

June Term
1854.

Cotton et al
vs.
Marsh et al.

creditor in preference to another, still he must do it fairly and honestly. He must secure none but real debts; he must not cover up an unreasonable amount of property; he must not extend the time so long as to raise a doubt of the bona fides of the transaction. Though a fair security for a real debt, payable at a reasonable time, may in fact hinder and delay other creditors to some extent, if this is not the prominent or real object of giving such security that is not prohibited by the statute.

You must look at the circumstances of this case to satisfy yourselves as to what was the real purpose of the mortgagor. And among these circumstances, you should look at the fact that the mortgagor was left in the possession of the goods, either as agent of the mortgagees, or otherwise, and was to go on and sell as usual, and to make remittances to the mortgagees.— The Court cannot say to you that these circumstances necessarily, as a matter of law, vitiate the mortgage; but you are to find, from all the facts, what was the intent of the parties. If you think it was made to hinder and delay creditors, then the plaintiffs cannot recover against any of the defendants; if it was not so made, then, so far as that point is concerned, the plaintiffs may recover against all or any of the parties.

The rule of damages in this case leaves an important question with you to be decided upon the evidence. The question is this,—what does the proof show that the goods were worth in the town of Grafton, from the tenth day of January, 1852, to the twentieth day of the same month, or on any one of the days? That is, what was the actual cash value of the goods at the time? what sum of money would

have purchased and placed in the hands of Mr. Gates as valuable a stock of goods?

To all which rulings and instructions of the court, the counsel for the defendants did specifically then and there except, and the same were noted by the court.

The cause was submitted to the jury under these instructions, and the plaintiffs obtained a verdict for the value of the goods, upon which judgment was rendered.

*Randall & Watkins,* for plaintiffs in error.

I. The plaintiffs below did not show such property in the goods as to entitle them to recover. 1 *Burrows*, 31; 1 *Chit. Pl.* 170; 2 *Green. Ev. p.* 593, *sec.* 636; *Gordon vs. Harper*, 7 *Term R.* 11; *Ayer vs. Bartlett*, 9 *Pick.* 156; *Fairbanks vs. Phelps*, 22 *Pick* 538; *Bank of Rochester vs. Jones*, 4 *Denio*, 460; 9 *Mass.* 304, 266; 24 *Pick.* 30; *Soper vs. Sumner*, 5 *Vermont*, 274; 2 *Kent Com.* 7th ed. note, p. 677.

II. The mortgage debt being payable on demand, there was no such default of payment proven as to change the property in the goods. *Smith vs. Plummer*, 15 *East.* 607; 22 *Pick.* 538.

III. The mortgagor had an interest in the goods, which was subject to execution, and a levy upon them was not a tortious conversion. *Bradley vs. Copley*, 50 *Eng. Com. Law*, 685; 22 *Pick.* 535; 9 *id.* 156; 6 *Hill*, 484; *Hanford vs. Archer*, 4 *id.* 276; *Van Antwerp vs. Newman*, 2 *Cow.* 543; *Steif vs. Hart*, 1 *Comst.* 20; *Randall vs. Cook*, 17 *Wend.* 54–57; *Mercen vs. Norton*, 15 *J. R.* 179; *Phillips vs. Cook*, 24 *Wend.* 390. Or, if so, proof of an order to return them was proper in mitigation of damages.

*Hayward* vs. *Seward,* 28 *Eng. Com. Law,* 269 ; 10 *Metcalf,* 317 ; 1 *Cow. Treat.* 343 ; 2 *Hall,* 85 ; 2 *Greenleaf's Ev. sec.* 649.

June Term 1854.

Cotton et al
vs.
Marsh et al.

IV. The court erred in refusing to submit to the consideration of the jury the facts and circumstances, secondly, thirdly, fourthly, fifthly, seventhly and eighthly requested by defendants, as indicia of fraud. *Wood* vs. *Lowry,* 17 *Wend.* 492 ; *Hoe* vs. *Acker,* 23 *id.* 653–653 ; *Griswold* vs. *Sheldon,* 4 *Comst.* 580 ; *Stark. Ev.* 650 ; 1 *Penn. R.* 57 ; 5 *S. & R.* 279 ; 3 *Met. R.* 117 ; 4 *Georgia R.* 541 ; 16 *Ohio R.* 547 ; *Rev. Stat. chap.* 75, *sec.* 6 ; *id. chap,* 38, *sec.* 3 ; *Otis* vs. *Sill,* 8 *Barb.* 102 ; *Egell* vs. *Hart,* 13 *id.* 386.

V. Such marks of fraud as there was no pretence of in this case were carefully selected as the rule of fraud, and so presented to the jury as to carry the impression that there were no other marks of fraud known to the law ; and that, in the absence of those mentioned, they should hold the mortgage to be *bona fide.*

VI. It is not essential that fraud should be the "prominent or real" object of an act to render it void as to creditors ; it is enough that the circumstances are sufficient to satisfy the jury of the *malœ fides* of the transaction.

VII. The charge of the court impressed the jury with the opinion that this was a case of "a race between two rival creditors," in which they were to decide who had been the swiftest, as the only fact or law of the case.

VIII. The charge of the court is evasive of the law, and an artfully devised decision of all the facts of the case, under a specious semblance of submitting them to the jury.

June Term
1854.

Cotton et al
vs.
Marsh et al.

IX. No action can be brought against the marshal and his deputy for the act of the deputy. 1 *Pick.* 62.

*Arnold & Hamilton*, for defendants in error.

The parties to this suit are rival creditors of a common debtor: in such a case the successful diligence of the party obtaining security is favored by the law.

The mortgage made by Gates to the plaintiffs below, was made in good faith to secure a *bona fide* indebtedness.

Possession having been delivered at the execution of the mortgage to the mortgagees, they became entitled to the usual legal remedies for injury to the mortgaged premises or their interest therein.

The defendants below by seizing mortgaged goods, on their execution against Hayden & Co., (including Gates,) and reducing the same to their actual possession, and removing them away and converting them to their own use, by a sale of them at auction, fixed their liability in this action to respond to the plaintiffs below for the value of said goods.

The only right of the defendants below, by virtue of their execution, was to levy upon the interest of Gates in the mortgaged goods, and to sell the same subject to said mortgage. They could have taken possession of the goods for the purpose of the sale; and after the sale they should have paid, first, the mortgage; second, their execution; and, thirdly, the balance (if any) to the mortgagor. They had no right to part with the possession of the goods, or to convert the same until the mortgage was paid- 50 *Eng. Com. Law Rep.* 684; 9 *Pick.* 156; 22 *Pick.* 538; 18 *Wendell*, 54; 4 *Hill*, 276; 6 *Hill*, 484; 24

*Wendell*, 390 ; 17 *Wend.* 57 ; 1 *Comst.* 96 ; 3 *Denio* 125 ; 2 *do.* 127

June Term 1854.

Cotton et al
vs.
Marsh et al.

*By the Court*, CRAWFORD, J. The first question to be disposed of in this case is, whether the chattel mortgage given by the witness Gates, to the defendants in error, was sufficient in the law to vest in them any interest in the mortgaged goods, which could enable them to maintain the present action.

On the 9th day of January, 1852, Gates being indebted to Marsh and Frear, in order to secure the payment of that indebtedness, executed a mortgage of certain goods, wares and merchandize then in his (Gates') possession, in favor of the said Marsh and Frear, and their agent, a Mr. Croes, having caused the mortgage to be filed in the office of the town clerk, took possession of the goods, and directed Gates the mortgagor, to take charge of them—"to go on and sell as usual, and make remittances to Marsh and Frear."

The third section of chapter thirty-eight of the Revised Statutes of this State, provides for the filing of mortgages of personal property in the office of the clerk of the town in which the mortgagor resides, &c., and declares that when so filed the mortgage shall be as valid as if it had been recorded in the office of the register of deeds. Section nine of chapter seventy-six of the Revised Statutes (which is a portion of what is commonly termed "the statute of frauds,") is in the following words: "No mortgage of personal property hereafter made, shall be valid against any other persons than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee, or unless the mortgage be

filed in the office of the town clerk, where the mortgagor resides, or in case he does not reside in the State, in the town where the property mortgaged may be at the time of executing the same, and such clerk shall endorse thereon the time of receiving the same." Under this provision one of three things is necessary to be done, in order that a chattel mortgage may be valid as against others than the mortgagor and mortgagees. Either, 1st, possession shall be delivered to and retained by the mortgagee; or, 2d, the mortgage shall be filed in the office of the town clerk of the town in which the mortgagor resides; or, 3d, in case the mortgagor do not reside in this State, the mortgage shall be filed in the office of the town clerk of the town in which the mortgaged property is at the time of the execution of the mortgage. A performance of either of these things would satisfy the requirements of the statute, and in the absence of fraud, the mortgage would be valid as against third parties as well as the parties thereto; but a non compliance with the provisions of the statute, regardless of the question of fraudulent intent, would render the mortgage invalid as against every person except the parties to it. In this case, we believe that the evidence showed a sufficient compliance with the ninth section of chapter seventy-six, by filing the instrument in the town clerk's office, and so far as that section is concerned, no legal objection can be successfully urged against the mortgage. In Massachusetts, from the statute of which State the provision of our own statute under consideration, was almost literally copied, the only difference being in requiring the mortgage to be *filed* with the town clerk instead of being *recorded* by him, we have several

decisions upon the point, to some of which we will June Term 1854.

Cotton et al
vs.
Marsh et al. refer. In the case of *Bullack, vs. Williams et. al.* (16 *Pick.* 33) Chief Justice Shaw says "The language of the statute is, that no mortgage of personal property shall be valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee, or unless the said mortgage be recorded, &c. The plain implication is, that if possession is delivered to and retained by the mortgagee, or if the mortgage is recorded pursuant to the directions of the statute, it shall be valid against other persons." Soon afterwards, in the same court in the case of *Forbes vs. Parker* (16 *Pick.* 462,) Mr. Justice Putnam in giving the opinion of the court, uses the following language : "The objection that there was no actual delivery, cannot be maintained, as the recording of the mortgage deed in the records of the town of Charlestown, where the mortgagor resided, was legally equivalent to an actual delivery " So also in *Ames vs. Phelps*, (18 *Pick.* 314) which was an action of trespass by a mortgagee of chattels (horses) against the deputy sheriff, who took them on writs in his hands against the mortgagor—the possession of the property had not been changed, but the mortgage had been recorded, and the court held thus : "The original mortgage is certified to have been recorded by the town clerk, who, for this purpose, is the regular certifying officer ; The mortgagor relics upon it, and has good reason to rely upon it as a valid security." The same view of the question was taken in *Dole vs. Bodman and another.* (3 *Met.* 129.)

The courts of New York furnish a number of decisions in which the filing of a mortgage of personal

JUNE TERM
1854.

Cotton et al
vs.
Marsh et al. property, under a statute on that subject similar in substance to our own, has been held insufficient as against creditors where the possession has been retained by the mortgagor.  But the fifth section of the New York statute concerning fraudulent conveyances of chattels, provides that all sales and conveyances of goods, *whether absolute or by way of mortgage*, unless accompanied by an immediate delivery and followed by an actual and continued change of possession, shall be presumed fraudulent and void.  Hence the courts of that State have frequently decided that notwithstanding the filing of the mortgage, if the possession of the property remained with the mortgagor, the *onus* of showing the *bona fides* of the transaction rested upon the party claiming under the mortgage, and until it was shown that the transfer was made in good faith, and not with a fraudulent intent, the law would presume it to be fraudulent and void, because there had been no change of possession.   To this effect are the cases of *Wood vs. Lowry* (17 *Wend.* 492,) *Smith & Howe vs. Acker* (23 *Wend.* 653) *Cole and Thurman vs. White* (26 *Wend.* 511) *and Hanford vs. Aitcher* (4 *Hill*, 271,) but in the case of *Lee vs. Huntoon and another*, (1 *Hoffman Ch. R.* 447,) the Vice Chancellor takes a different view of the subject, and holds that the filing of the mortgage has the same effect as a change of possession.

We think that under our statute, the filing of the instrument relieves the party claiming under the mortgage from the *onus* of proving the honesty and good faith of the transaction as effectually as a change of possession would.  (*Vide Donaldson vs. Johnson et al. 2 Chand.* 160.)   Either the filing of the mortgage or a delivery and change of possession of the goods

would impose the necessity on the party assailing the mortgage, to show that it was fraudulent in fact. Viewing the question in this light, we believe the court below, properly refused to give to the jury the second, third, fourth, fifth and eighth instructions asked by the defendants.

The next question in the case relates to the first instruction asked by the defendants below. The mortgage in this case was a security for the payment *on demand* of the indebtedness of Gates to the mortgagees, Marsh and Frear, and it contained the following clause: "And in case the said Marsh and Frear shall at any time deem themselves insecure, it shall be lawful for them to take possession of said property, and sell the same at public or private sale as aforesaid." From the testimony of Gates it appears that after the filing of the mortgage, Croes, who acted as the agent of the mortgagees, took possession of the property, and subsequently placed Gates in possession again for Marsh and Frear, with instructions, "to go on and sell as usual, and make remittances to Marsh and Frear."

Now certainly the placing the mortgagor back again in possession of the goods with the power to dispose of them, was a fact very proper to be left to the jury in connection with the question of a fraudulent intent, but it did not of itself amount to fraud, because our statute would hold the mortgage perfectly valid notwithstanding the possession had not been changed *from* the mortgagor, when the mortgage had been filed. Although in a transaction of this kind, permitting the mortgagor to retain the possession and control of the goods might induce a suspicion that it was intended as a cover for an unfair or fraud-

June Term 1854.

Cotton et al
vs.
Marsh et al.

ulent purpose, yet it is not necessarily so in view of the statute, because with an honest intention and from prudential motives the mortgagor may be left in the possession, to dispose of the goods for the best interests of his mortgagee. It is true the jury may take this circumstance into consideration in connection with all the facts in the case in determining whether there was an intent to defraud in the transfer, but if the parties chose to assume this risk, we do not see why they were not as much at liberty to leave the property in the possession of Gates, the mortgagor, as in the possesion of a third party. He held possession for Marsh and Frear at the time of the levy, and if the transaction was not fraudulent in fact, of which the jury were to judge, then the possession of Gates was the possession of Marsh and Frear, and if the officer illegally invaded that possession and converted the goods, Marsh and Frear might maintain this action without making any demand of the goods. Hence we think the first instruction asked by the defendants below, was very properly refused.

A careful examination of the charge given to the jury in this case, has satisfied us that the whole question of fraudulent intent, was fairly submitted to the jury, and we see nothing in the case which should render the determination at which they arrived, unsatisfactory.

The sixth instruction asked by the defendants is not correct. One of the defendants, Higgins, was deputed by the defendant, Cotton, to execute the writ of *fieri facias* by virtue of which the goods were taken. By this deputation, Higgins acted for the U. S. marshal, Cotton, as his deputy in levying upon the goods in question. His acts were the acts in law of

the marshal, for the mandate of the writ as well as June Term 1854.

Cotton et al
vs.
Marsh et al. the return thereto, shows that the marshal was officially called upon to execute it, and by his deputy did execute it. The property was levied upon and removed by Higgins *colore officii*, and the mortgagees might pursue their remedy against Higgins alone, who unlawfully took the goods, or against Cotton, by whose direction and for whom Higgins acted, or against both of them, inasmuch as in law the acts of the deputy are also the acts of the marshal who deputed him. There can be no doubt that the plaintiffs in this action might have maintained trespass or trover against Higgins, if he took the goods away without authority of law, if they had chosen to do so. It is equally clear to our minds that as Higgins in taking the goods, acted in the name of the marshal, and by virtue and color of his office as deputy, in the execution of legal process—as he made the return of service in writing endorsed on the writ in the name of the marshal, and as, from the testimony of the witness Caleb Wall, it was shown that the marshal had recognized the act of his deputy in taking these goods, by making arrangements for the sale of them in Milwaukee and receiving a part of the proceeds of the sale thereof, the marshal himself became liable in trespass or trover, to the present plaintiffs, whose title and possession as mortgagees had been invaded In Mr. Watson's treatise on *the law relating to the office and duty of Sheriffs*, page 37, it is said "The sheriff is responsible for all the acts of his bailiff done in the execution of writs, but he is not liable for the criminal acts of his officer, by which is meant that he is not liable to be indicted for the acts of his officer. But the sheriff is liable to an action of trespass, when

June Term 1854.

Cotton et al
vs.
Marsh et al.

his officer, in executing a writ against the goods of A. takes the goods of B." &c.

Lord Mansfield, in delivering the opinion of the court of Kings Bench in the case of *Ackworth vs. Kempe* (1 *Doug.* 40) where the sheriff of Sussex was held liable in trespess *vi et armis* for the acts of his officer, says, " For all civil purposes the act of the sheriff's bailiff is the act of the Sheriff." The same view of the sheriff's liability had previously been taken by the Court of Common Pleas in *Saunderson vs. Barker & Martin,* (3 *Wills.* 309.) in which case the defendants as sheriffs of London were held liable for the illegal acts of their officer in levying an execution against one Beaver, on the goods of the plaintiff, and Mr. Justice Gould, in closing his opinion says, " In this case I consider all three, the sheriff, under sheriff and deputy as one person." In *Woodgate vs. Knatchbull* (2 *Durn. & E.* 146,) the sheriff was held liable for the conduct of his officers in taking illegal fees, although he was a stranger to the transaction. A case of a similar kind is *McIntyre vs. Trumbull* (7 *John.* 35,) where the court say : " On this point the law is too well settled to be questioned. The sheriff is answerable, *civiliter*, for the acts of his deputies, and it is no objection that the act is of a criminal nature, for which the deputy might be answerable, *criminaliter*. Whether it was shown that the sheriff had recognized the acts of his deputy does not appear. If such recognition was necessary to be shown, we are to presume it was done in this case, but the better opinion is, that it was not necessary.

Mr. Justice Bronson, in giving the opinion of the court in *Waldon vs. Davison* (15 *Wend.* 575) treats the question thus : " In ascertaining whether the

June Term
1854.

Cotton et al
vs.
Marsh et al.

sheriff is answerable for the acts of his deputy, the question is whether the latter did an official or a mere personal act. If the act is personal only and does not relate to his duty as an officer, he is not the agent or servant of the sheriff, but if he execute process under color, or by virtue of his office, the sheriff is answerable for the consequences. It is not necessary to charge him, that the act of the deputy should in all cases be lawful, or one which he might rightfully do under the process."

Without citing other authorities, we may conclude this branch of the case, by saying that he who commands or procures a trespass to be committed, is equally liable with him who does the act—both are trespassers, and may be sued together. And if liable in trespass, the plaintiff or party injured in a case iike the present one, may choose his remedy and sue in trover.

Another point insisted upon in this case by the plaintiffs in error, and upon which they requested their seventh instruction to the jury on the· trial in the Circuit Court, is that the mortgagor, Gates, had an interest in the mortgaged property which was subject to levy and sale on the execution against him. This is true, but not to the extent claimed in the in-- structions asked. A mortgagor of chattels has an interest in the mortgaged property until it has been barred or foreclosed, which may be seized, taken and disposed of by his creditors. But this is such an interest that it must be taken and treated as subservient to the paramount interest of the mortgagee. The latter has a vested right to require that the property be converted into a satisfaction of his demand, and subject to this right the creditor of the mortgagor

17

June Term
1854.

Cotton et al
vs.
Marsh et al. may attach or seize the property. He cannot, however, deprive the mortgagee of the possession of his security, if he has such possession, nor can he assume control and dispose of the property regardless of the prior right of the mortgagee. On this subject the charge given to the jury by the Circuit Judge was a correct exposition of the law, and is abundantly sustained by the following adjudications: *Marsh vs. Lawrence*, 4 *Conn. R.* 461; *Phillips vs. Cook*, 24 *Wend.* 390; *Strip vs. Hart, Hart*, 1 *Comst.* 20; *Bank of Lansingburgh vs. Crary*, 1 *Barb.* 542. See also *Story on Bailments*, § 353; *Revised Statutes,* chapter 102, sec. 49.

We therefore think that the seventh instruction was properly refused.

There is no other question presented in this case which requires discussion.

The plaintiffs in the action, by their mortgage and the filing thereof, and by the possession of the mortgaged property taken in pursuance of the mortgage under the provisions of our statute, acquired such a property as enabled them to maintain this action against the present defendants, (the plaintiffs in error,) who had no legal right to seize and remove the property. The evidence in the case was satisfactory to the jury, to whom every legitimate question seems to have been submitted, and they have by their verdict declared the transaction to have been *bona fide* and without any fraudulent intent.

The judgment of the Circuit Court must therefore be affirmed.