## CHARLES C. COTTON, Plaintiff in Error,

### *vs.*

## CHARLES K. WATKINS, Defendant in Error.

ERROR TO THE MILWAUKEE CIRCUIT COURT.

The omission of the circuit judge to charge the jury as requested by either of the parties, on the trial, cannot be assigned for error, unless exception be taken to such omission.

The residuary interest of the mortgagor of personal property may be sold on execution ; but nothing but the interest of the mortgagor or pledgor can be sold.

The mortgagee or pledgee of personal property has a right to the possession of the property, for the purpose of obtaining payment of his debt, and whosoever wrongfully takes the goods from his possession before this is accomplished, is a trespasser.

This was an action of trespass *de bonis asportatis* by defendant in error, the declaration being in the usual form. The defendant below pleaded two pleas: 1st. *Non cul.* 2d. That the goods and chattels in the declaration mentioned, were not at the said time when &c., nor are they now the property of the said plaintiff in manner and form as alleged, concluding to the country, and gave notice of the recovery of a judgment in the district court, U. S., on the 4th August, 1853, in favor of Mussey and Bazin against Ira A. Hopkins, the issuing of an execution thereon, the delivery thereof to the defendant in said suit, who then and there was one of the deputies of the Marshall U. S. for the district of Wisconsin, and his levying upon, seizing, attaching and taking the said goods as the property of said Hopkins, and that if it be pretended that before that time they had been mortgaged or sold by Hopkins to the plaintiff, that the same was fraudulent and void against the plaintiffs in said execution as the creditors of Hopkins.

On the part of the plaintiff it appeared that Ira A. Hopkins was the owner and in possession of a stock of law, miscellaneous

and other books, stationery. &c., on the 17th day of June, 1853, as a bookseller and stationer in the city of Milwaukee, and on that day sold the same to Gilbert & Wardner for the sum of $3,000 ; and to secure the payment of said sum, on the same day took a chattel mortgage therein described as follows:— " All the following described personal property, to wit:—All the books, miscellaneous, law, and others of all kinds, together with the stationery, furniture, fixtures, fancy articles, and personal property in the store lately occupied by said Hopkins, in Martin's Block, in said city, including all the stock-in-trade heretofore belonging to said Hopkins," conditioned for the payment to said Hopkins of the " sum of $3,000, with interest at 7 per cent. per annum as follows :    $100 with interest as aforesaid each month for three months, and the balance in twenty-one monthly payments thereafter, according to the promissory notes of said Gilbert & Wardner of even date herewith, then this transfer and these presents to be void and of no effect. But in case of the non-payment of the said sum of money or any part thereof, at the time mentioned, the said Ira A. Hopkins shall have full power to take possession of said property above described, and sell the same at public or private sale, after giving six days notice of the time and place of such sale, and to apply the avails of said property to the payment of said $3000 and interest aforesaid, returning the residue to said Gilbert and Wardner, after paying all reasonable costs and charges.   And in case the said Ira A. Hopkins shall at any time deem himself insecure, it shall be lawful for him to take possession of said property and sell the same at public or private sale as aforesaid."    That said mortgage was filed and endorsed, July 2d, 1853, at 5½ o'clock P. M., in the city clerk's office.   That for several years previous to the trial, the plaintiff had been the general attorney and legal adviser of Hopkins, and that this fact was known to Gilbert & Wardner and others.   That on the 9th day of July, 1853, Hopkins was indebted to the plaintiff in an unsettled account for professional services in the sum of about $1700. That on the said 9th day of July, 1853, said Hopkins executed

and delivered to the plaintiff a paper in the words as follows : Gilbert and Wardner to Ira A. Hopkins. Chattel mortgage on stock, books, &c., for purchase money. For and in consideration of one dollar, &c., I do hereby assign and transfer the *above* mortgage to Charles K. Watkins. July 9th, 1853. (Signed) J. A. Hopkins. L. s." That at the same time he delivered to said plaintiff the notes of Gilbert and Wardner in the said mortgage specified, and other securities, and that the plaintiff at the same time gave back to said Hopkins a receipt reciting the securities received from him, and some other securities placed in plaintiff's hands as collateral security for and to be collected and applied to plaintiff's debt, and the other securites and obligations against Hopkins in plaintiff's hands. That the other securities and obligations in plaintiff's hands referred to in said receipt, was a demand in favor of Hopkin's father for about $1000, for an endorsement to the Cayuga County Bank, which claim plaintiff afterwards further secured by a mortgage upon real estate of Hopkins. · That the stock of goods sold by Hopkins to Gilbert & Wardner and by them mortgaged back to him, was all the property said Hopkins had liable to execution, except some real estate encumbered by mortgage to about its value. It further appeared that on the 18th of July, 1853, plaintiff came into the store of Gilbert & Wardner and took possession of the whole stock (all being the goods mortgaged) for the non payment of the first instalment. That he did not state in what character (as to assignee, attorney, or agent of Hopkins) he took possession, but only that he took possession under the mortgage. He, plaintiff, was known to Gilbert and Wardner to be the general attorney of Hopkins. That at the time of taking possession he was alone, and told Gilbert, that he, plaintiff, would arrange the notes (given with the mortgage) with him, Gilbert, and that he would do so of his own right. The plaintiff thereupon put his brother in charge of the store as clerk, who, from thence, until the levying and taking hereinafter mentioned, about four weeks, retailed and sold the goods in the *same store* for cash, by sales averaging from 31 cents to 10 dollars per day. That sometime in August,

between the 18th and 20th, the defendant came in and took about $550 worth of goods, at the invoice price, out of the store. That the invoice price of the whole stock on hand when plaintiff took possesion was about $2700. That defendant levied upon and took about one-fifth of the whole stock. That the invoice price of the goods was about 25 per cent. too high. That the paper dated July 9, purporting to be an assignment of the mortgage, was in the draw or pigeon hole in the office of the plaintiff and his law partner, Mr. Stark, until the Friday or Saturday preceding the trial, when it was attached to the said mortgage by a wafer, and was never filed.

On the part of the defendant, the said assignment was objected to in evidence for the following reasons: 1st. That the said assignment was not attached or annexed to the said mortgage; the "above mortgage" referred to in said assignment. 2d. Because there was no proof of the delivery of said mortgage, or the said assignment. 3d. There was no proof that the "one dollar" mentioned or any value was paid for the said assignment; which said several objections were overruled by the court, and the said defendant then and there excepted thereto. The said assignment was further objected to as evidence against the said defendant on the ground that it had not been filed or recorded in the city clerk's office as required by statute, which said objection was also overruled, and the said mortgage and assignment were admitted in evidence to the jury, to which ruling and decision of the court the defendant then and there excepted.

The defendant proved, without objection, the judgment and execution in the notice mentioned, and that by virtue thereof, before this suit, defendant levied upon and removed from said store, the goods in question; and on the 29th August, 1853, sold the same for $213, and the said execution returned no other property found to satisfy the balance of the execution. That the sole consideration of the said assignment of the Gilbert & Wardner notes and mortgage, *and other securities by Hopkins to plaintiff*, was the said Hopkins' indebtedness to plaintiff as aforesaid, and the claims of Hopkins' father in

plaintiff's hands for security as aforesaid, and for which plaintiff at the same time gave Hopkins his receipt as aforesaid. That Hopkins had been in business in Milwaukee, as bookseller and stationer, several years before he sold out to Gilbert & Wardner as aforesaid, and in business in the store in Martin's Block about two months before. That plaintiff's brother, as agent or clerk for plaintiff, continued in possession of the balance of the stock, selling the goods at retail as before stated, from ten days to two weeks after the levy and taking by defendant. That the goods were then taken over to Hood's auction store, and advertised and sold by plaintiff's directions under the said chattel mortgage, given by Gilbert & Wardner, and on such sale, plaintiff bid in more than two-thirds of the whole stock. That the goods thus bid in by plaintiff, with the exception of some little articles kept by him, were boxed up and put into a warehouse in Milwaukee. That sometime thereafter, the goods thus sent to the warehouse were again sold by auction, by Caleb Wall, auctioneer, to Jason Downer who was the largest bidder, he having bought to the amount of $587, and given his note or notes to plaintiff for that amount. That besides this sum, all the plaintiff received from all the goods thus sold, was about $100 from Hood, $100 from Wall, and $35 from plaintiff's brother, as agent and clerk as aforesaid, and that the value left on hand was about $25. That plaintiff's brother was not a bookseller or stationer by trade or occupation ; and that plaintiff allowed him $1 per day for his services. That Gilbert & Wardner had never settled with Hopkins up to the time of trial. Hopkins had the goods and mortgage both so far as known to the witness, Gilbert; and that he, the witness last named, did not know where the notes and mortgage were.

Upon the close of the testimony, the counsel for the parties addressed the jury and the court upon the law and the facts ; and the counsel for the defendant verbally requested the court to charge that the plaintiff was not entitled to maintain this action of trespass against the defendant upon the testimony, and the court thereupon omitted and neglected so to charge in

that behalf, and thereupon the jury brought in a verdict for the plaintiff against the defendant for the sum of $350.

The defendant below moved the court for a new trial which was refused and judgment was entered upon the verdict, to reverse which this writ of error was brought.

*Peter Yates*, for the plaintiff in error.

*J. Stark*, for the defendant in error.

*By the Court*, WHITON, C. J.   The bill of exceptions in this case shows that the only exception taken to the ruling of the judge at the trial, was in relation to the admission in evidence of the assignment of the mortgage to the plaintiff below. It appears that the defendant below, Cotton, requested the judge to instruct the jury that the plaintiff was not entitled to maintain the action upon the testimony, and that the judge "omitted and neglected" so to charge the jury. But it does not appear that any exception was taken to this omission of the judge. It appears also that the defendant below made a motion for a new trial, and that the motion was denied, but no exception appears to have been taken to the order of the judge denying the motion.

We cannot properly, therefore, look at any of the errors assigned, except the one in relation to the admission of the assignment of the mortgage in evidence. We think this was clearly admissible. The plaintiff was in possession of the mortgaged property at the time the defendant took it away; he was selling it at retail and using it as his own. If there was any technical objection to the reception of the assignment in evidence at the time it was offered, because it did not sufficiently identify the mortgage, the objection was subsequently removed by the defendant's testimony.

The bill of exceptions shows that the defendant proved that the sole consideration of the said assignment of the notes and mortgage and other securities by Hopkins to the plaintiff was

Hopkins'debt to the plaintiff. The defendant then proved the assignment of the mortgage and the consideration. We have thus disposed of the only question fairly presented by this record.

But if the plaintiff in error had taken an exception to the omission of the judge to charge the jury as he requested, we do not think that exception would have availed him.

He requested the judge to decide the whole case ; to leave nothing to the jury to pass upon, however fair and honest the assignment of the mortgage may have been. We suppose that if Hopkins was indebted to the plaintiff, and honestly and fairly assigned the mortgage to him to secure or pay the debt, the plaintiff became invested with all the rights of a mortgagee of the property. He had the same right to take possession of the property and foreclose the mortgage. He had the right therefore to maintain trespass against any one who wrongfully took the goods from him. The counsel for the plaintiff in error contends that if this was an assignment of a portion of Hopkins' property to secure the plaintiff's debt, then the plaintiff obtained but a specific lien upon it, and the residuary interest of Hopkins was liable to a sale on execution. He cites the case *Leitel vs. Hollister*, 4 Comst. R., 211, in support of this proposition. We have no doubt of its correctness. We have the same doctrine established by statute in this State, in regard to the chattels pledged for the payment of money. Rev. Stat., chap. 102, § 49. But nothing but the interest of the mortgagor or pledgor can thus be sold. The mortgagee or pledgee has a right to the possession of the goods for the purpose of obtaining the payment of his debt, and whosoever wrongfully takes the goods from his possession before this is accomplished, is a trespasser.

Assuming then, that the plaintiff obtained only a lien on the goods by the assignment, for the purpose of paying his debt against Hopkins, he had a right to the possession of the goods for the purpose of enforcing the payment of the debt, and the defendant was guilty of a trespass by taking and carrying them away. The judgment is affirmed.