## Musgat vs. Pumpelly and another.

CHATTEL MORTGAGE. EVIDENCE: TENDER. *(1) Transaction held a mortgage of chattels. (2) Mortgage without personal liability? (3) Evidence of circumstances to aid construction. (5) Effect of tender by mortgagor in possession.*

REVERSAL OF JUDGMENT. *(4) Error against appellant not cured by error against respondent.*

1. An instrument under seal executed by P. and wife to M., declares that, in consideration of $430 to them in hand paid, they have " bargained, sold, granted and conveyed to M., his executors," etc., a certain mare and harness, phaeton, and piano, all then in their possession: "*provided, however*, and on these conditions," that if said P. or his representatives should, within six months, pay to M., his representatives or assigns, $75 and ten per cent. interest for said piano, or $150 and ten per cent. interest for said mare, or $215 and ten per cent. interest for said phaeton and harness, then said instrument, " as to the article or articles so redeemed," should be void; and that M. agreed to let P. redeem said chattels severally by payment of said respective sums, and, " to resell, assign and transfer to said P., by bill of sale, any separate chattels so redeemed; " *provided, further*, that P. should retain possession of the property during said six months. There was also a *habendum*, and a warranty of title. *Held*, that, in the absence of any testimony as to the circumstances under which the instrument was executed, the transaction must be regarded, not as a conditional sale, but as a *mortgage*.

2. Whether there can be a chattel mortgage without personal liability of the mortgagor, or some other person, to the mortgagee, for the sum secured, is not here determined; there being no evidence that there was *not* such a liability in this case.

3. Parol evidence would have been admissible in this case to show the *circumstances* under which the contract was made, for the purpose of enabling the court to construe it. *Lyman v. Babcock*, 40 Wis., 503.
4. Error of the court below, against the appellants, in holding the contract, unexplained by evidence of facts attending it, a conditional sale, would not be cured by its erroneous rejection of evidence of such facts offered by respondent; nor could the latter error be considered here on this appeal.
5. A tender of the mortgage debt by the mortgagor remaining in possession after condition broken, kept good by payment of the money into court, is a good defense in an action by the mortgagee for the possession.

APPEAL from the Circuit Court for *Fond du Lac* County. The case is thus stated by Mr. Justice TAYLOR:

This action was brought to recover the possession of a piano which plaintiff alleged he was entitled to the possession of, and the defendants unlawfully detained.

The answer was a general denial, and that the property belonged to the defendant *Eliza W. Pumpelly*, subject to a certain mortgage given to the plaintiff, and that, before the commencement of the action, she had tendered to the plaintiff the whole amount due upon such mortgage; that the tender had not been accepted by the plaintiff; and that she had kept her tender good by paying the money so tendered into court for the use of the plaintiff.

The only evidence given on the part of the plaintiff to establish his title to the piano, and his right to the possession thereof, was an instrument in writing executed by the defendants, of which the following is a copy:

" *Know all men by these presents*, that we, *James K. Pumpelly* and *Eliza W. Pumpelly*, of Fond du Lac, Wis., of the first part, for and in consideration of the sum of four hundred and thirty dollars ($430), lawful money of the United States, to me in hand paid at or before the ensealing and delivery of these presents, by *John Musgat* of the second part, have bargained, sold, granted and conveyed unto the said party of the second part, his executors, administrators and assigns, one

Musgat vs. Pumpelly and another.

sorrel mare, known as the ' Queen' mare, one single harness used on said mare, made by Basset, and one top phaeton, made by Purdy & Co., all now in the possession of said *Pumpelly;* also one piano, made by Norton & Co., and numbered 133, now at the house No. 61 Fourth street, in said *Pumpelly's* possession.

" *Provided, however*, and on these conditions, that if said *Pumpelly* or his representatives shall, on or before six months after January 1, 1877, pay to said party of the second part, his representatives or assigns, the sum of seventy-five dollars and ten per cent. interest for said piano, or one hundred and fifty dollars and ten per cent. interest thereon for said mare, or two hundred and fifteen dollars and ten per cent. interest thereon for said phaeton and harness, then this instrument, as to the article or articles so redeemed, shall be void; and said party of the second part agrees to let said *Pumpelly* redeem said chattels severally and separately by the payment of said respective sums, and to resell, assign and transfer to said *Pumpelly*, by bill of sale, any separate chattels so redeemed. *Provided, further*, that said party of the first part shall retain possession of said property until July 1, 1877.

" *To have and to hold* the same unto the said party of the second part, his executors, administrators and assigns forever. And I do for myself, my heirs, executors and administrators, covenant and agree 'to and with the said party of the second part, to warrant and defend the said described goods hereby sold, unto the said party of the second part, his executors, administrators and assigns, against all and every person and persons whomsoever.

" *In witness whereof*, we have hereunto set our hand and seal this twenty-third day of December, 1876.

" Signed, sealed and delivered in presence of Charles E. Shepard.

" JAMES K. PUMPELLY,   [SEAL.]
" ELIZA W. PUMPELLY.   [SEAL.]"

There was some evidence upon the question whether a demand of possession of the piano had been made by plaintiff before suit brought. The plaintiff admitted the tender as alleged in the answer.

Defendants moved for a nonsuit, which was denied. They then proved the tender, and the further fact that the amount tendered was paid into court at the return day of the writ.

There was a verdict for the plaintiff by direction of the court. Defendants moved to set aside the verdict, and for a new trial, upon the ground, among others, that "the court erred in construing the instrument under which the plaintiff claimed title to the property, to be a conditional bill of sale, and in not construing it to be a chattel mortgage." The motion was denied; and, from a judgment upon the verdict, defendants appealed.

For the appellants, there was a brief by *Shepard & Shepard*, their attorneys, with *James M. Gillet*, of counsel, and oral argument by *Chas. E. Shepard*.

*D. W. C. Priest*, for the respondent.

TAYLOR, J. In the absence of all testimony showing the circumstances under which this agreement was made, and in view of the well settled rule of law that courts in cases of doubt are disposed to hold that a contract is a mortgage rather than a conditional bill of sale, we are inclined to hold that the contract between the parties in this case, standing alone and uncontrolled by evidence of the existing relations between the parties at the time the same was executed, must be held to be a mortgage rather than a conditional sale. See Herman on Chattel Mortgages, p. 54, § 23, and cases cited; Thomas on Mortgages, 23. The matters in the contract which induce us to consider it a mortgage are these:

I. The property claimed to have been sold to the respondent was to remain in the possession of the appellants for six months after the date of the claimed sale, without any com-

pensation being made for the use of the same during that
period.   As a sale of personal property the contract is unusual
in this respect.

II.  The condition in the contract, that if, at or before the
expiration of said six months, the appellant should pay a sum
in the aggregate amounting to very nearly the sum mentioned
as the consideration of the sale, with interest at the rate of ten
per cent. per annum from the date of the agreement until the
time of payment, then the sale should be void, is quite con-
sistent with the conclusion that the contract is a mortgage.

III.  The peculiar language of the contract as to the effect
of the payments when made, indicates that the sale was not a
mere conditional sale.   The contract says that, when certain
payments are made, " then this instrument, as to the articles
*so redeemed*, shall be void; and said party of the second part
agrees to let said *Pumpelly* redeem said chattels severally and
separately, by the payment of said respective sums, and to re-
sell, assign and transfer to said *Pumpelly*, by bill of sale, any
separate chattels so redeemed."   We think the use of the
words *redeem* and *redeemed* in this contract are of some sig-
nificance in determining its legal effect.   Although the use of
the word redeem is strictly proper to express the right to re-
purchase property sold conditionally, still, when used in legal
documents and contracts, it is ordinarily understood to mean
the right to release property pledged or mortgaged from the
lien or claim of the pledgee or mortgagee.   The right of a
mortgagor as against the mortgagee, at common law, to dis-
charge his estate from the claim of the mortgagee, after con-
dition broken, is called his equity of redemption; and the
same phrase is always used by the courts to express the right
of a mortgagor of personal property to discharge the same
from the claim of the mortgagee after condition broken.
*Smith v. Coolbaugh*, 21 Wis., 427; *Flanders v. Thomas*, 12
Wis., 410; *Rosebrook v. Runals*, 32 Wis., 415–420.   The pro-
ceeding to enforce such equity of redemption is denominated

a bill to redeem, or, under the code, an action to redeem. Redeemable rights are defined to be "those rights which return to the conveyor or disposer of land, etc., upon payment of the sum for which such rights are granted." 5 Jacob's Law Dic., 422; Wharton's Law Dic., 871. Giving to these words their ordinary signification, it would seem that the parties understood that the claim of the respondent to the property in question was rather in the nature of a pledge or mortgage, than of a conditional sale; and the fact that the respondent agreed to reconvey on such redemption being made, does not fully destroy the inference derived from their use.

IV. The respondent permitted the property to remain in the possession of the appellants for several months after he was entitled to the possession by the terms of the contract, and, so far as the evidence in the case shows, without making any claim that the possession should be delivered to him.

These considerations constrain us to hold that the learned circuit judge erred in construing the written contract into a conditional sale. The following authorities, we think, fully sustain our construction of this contract: *Wood v. Dudley,* 8 Vt., 430–435; *Morrow v. Turney's Adm'r,* 35 Ala., 131; *Barnes v. Holcomb,* 12 Sm. & M., 306; *Hammonds v. Hopkins,* 3 Yerg., 525; *Brown v. Bement,* 8 Johns., 96; *Brown v. Dewey,* 1 Sandf. Ch., 56–7; *Clark v. Henry,* 2 Cow., 324; Herman on Chattel Mortgages, 46 and note; *Newhall v. Burt,* 7 Pick., 157; *Rice v. Rice,* 4 Pick., 349.

It is urged by the learned counsel for the defendant, that the contract, standing alone and unexplained by the circumstances under which it was executed, must be held to be a conditional sale, because there is no covenant in the same on the part of the defendants, or either of them, to repay to the plaintiff the money he had advanced upon the property. If it were a fact, that the relation of debtor and creditor did not exist between the defendants, or either of them, and the plaintiff, after the execution and delivery of such contract, it would be

a very strong circumstance against the construction we have concluded the contract must receive standing by itself; but upon that subject the proof is entirely silent. The only proof on that subject is the statement of the plaintiff " that he had had business dealings with the defendants; and that *Mr. Pumpelly* owed him for goods from the store." ·This evidence certainly does not show that the relation of debtor and creditor did not exist, nor have we given it any weight in favor of construing the contract to be a mortgage, as it is not in any way connected with the execution of the contract, nor is there any amount of indebtedness shown which in any way corresponds to the sum stated as the consideration therein. In the absence of any express evidence to show the contrary, we would be justified in presuming that the relation of debtor and creditor did exist between the parties from the very fact that the contract executed was in its nature a chattel mortgage, and therefore a security for an existing debt. *Horn v. Keteltas*, 46 N. Y., 605; *Conway's Ex'rs v. Alexander*, 7 Cranch, 218; *Flagg v. Mann*, 14 Pick., 467; Herman on Chattel Mortgages, p. 55, § 24, and cases cited; *Russell v. Southard*, 12 How., 139–152.

That a mortgage of real estate can be made in this state, without any personal liability in favor of the mortgagee, which can be enforced against the mortgagor, is evident from the fact that sec 2204, R. S. 1878, expressly provides that unless the mortgage contains an express covenant to pay, or there is a bond or other separate instrument to· secure such payment, the mortgagee shall not have a personal action to recover the money secured by the mortgage.

It is, however, unnecessary to the determination of this case, to decide whether there can be a chattel mortgage in the absence of any personal liability on the part of the mortgagor, or some other person, to the mortgagee, for the sum or debt secured by such mortgage.

In this case, the evidence does not show that no such per-

sonal obligation exists, and, in the absence of proof on that point, the fact that the written contract is in the nature of a mortgage, raises a presumption that such personal obligation does exist.

As we have remarked above, this contract is somewhat obscure and doubtful as to its real character, and, in the absence of any evidence explanatory of the circumstances under which it was executed, we have felt constrained to hold it to be a mortgage rather than a conditional sale; but we do not intend to hold that this construction could not be changed by extrinsic evidence showing the circumstances under which the contract was made. That these circumstances might be given in evidence, in order to enable the court to give a construction to a contract of the doubtful character of the one in question, is fully established by the authorities, and it has been so expressly adjudicated by this court. *Lyman v. Babcock*, 40 Wis., 503. In that case, the chief justice, in delivering the opinion, says: "Had the pleadings and proofs disclosed the circumstances under which the contract between the parties was made, their respective relations to the subject matter, and to each other respecting the subject matter, we might have been better able to put a construction on the contract, and the construction might have been more satisfactory to ourselves. Such evidence is always admissible, not to vary the terms of a written contract, or to explain patent ambiguities, but to facilitate the construction of terms obscure in themselves, in relation to the subject matter, on the face of the contract." The authorities cited in that case to sustain the rule are very clear and satisfactory, and it will be found, upon an examination of the cases in which the question has arisen, whether a written contract was a mortgage or a conditional sale, that parol evidence was almost invariably resorted to for the purpose of aiding the court in the construction of the contract. In the case at bar, if the evidence had disclosed that this contract was made without any application for a loan on the part of the defendants,

or that no loan was in fact made by the plaintiff to the defendants, and that the same was not made as a security for an existing debt due from the defendants to the plaintiff, a different construction might be given to it. It was said upon the argument of this case, that such evidence was offered by the plaintiff in the court below, and that the same was rejected upon the objection of the defendants. If such evidence was offered, we think there can be no doubt that the court erred in rejecting it; but, as the judgment in the court below was in favor of the plaintiff, and the case was tried by a jury, no exceptions taken to the rejection of evidence offered by the plaintiff can be considered upon this appeal. The error of the court in holding that the contract, unexplained by the circumstances attending its execution, was a conditional sale, is not cured by the fact that the plaintiff offered evidence which should have been admitted, and which might have shown that it was in fact a conditional sale and not a mortgage. The evidence was not before the court below, and is not before this court; and it is therefore impossible to say what its effect would have been, had it been received.

It is urged by the counsel for the plaintiff, that if it be admitted that the contract is a mortgage and not a conditional sale, still the plaintiff was entitled to recover in this action; that if a mortgage, the day for the payment of the mortgage debt had passed long before any tender of the amount due was made, and long before this action was commenced, and, there being no agreement in the mortgage that the mortgagee should sell the property and satisfy his debt out of the proceeds, and return the surplus of the proceeds of such sale, if any, to the mortgagor, the title to the mortgaged property became absolute in the mortgagee at law, after the day of payment had passed and the debt remained unpaid; and that, in such case, the only remedy of the mortgagor was an equitable action to redeem.

This seems to be the rule as established in the courts of

New York, and this court has, with perhaps some modification, followed that rule.   *Nichols v. Webster*, 2 Pin., 234; *Cotton v. Marsh*, 3 Wis., 221; *Cotton v. Watkins*, 6 Wis., 629; *Bates v. Wilbur*, 10 Wis., 415; *Flanders v. Thomas*, 12 Wis., 410; *Welsh v. Sackett*, id., 244; *Smith v. Coolbaugh*, 21 Wis., 427; *Rosebrook v. Runals*, 32 Wis., 415; *Appleton Iron Co. v. Assur. Co.*, ante, p. 23; *Blakeslee v. Rossman*, 43 Wis., 116–127.

The cases cited recognize the doctrine that the legal title of the property mortgaged vests in the mortgagee after the condition is broken by nonpayment at the time fixed in the mortgage, and, at the same time, they recognize the fact that the mortgagor has an equity of redemption, notwithstanding the forfeiture; and some of them hold that the mortgagee will be estopped from asserting his legal right to the property, if the mortgagor, while still in possession of the mortgaged property, has a set-off or counterclaim against the mortgagee equal to or greater than the mortgage debt.   This was held in the case of *Rosebrook v. Runals, supra*.   But, without deciding the question whether a tender of the mortgage debt after condition broken, to the mortgagee in possession of the mortgaged property, would entitle the mortgagor to recover the possession of the property in an action at law, we have no hesitation in holding that a tender made by the mortgagor after condition broken, he being in possession of the mortgaged property, and keeping the tender good by bringing the money into court, when the mortgagee brings an action to recover the possession, is a good defense to such action.   We think it may be held a good defense at law, when the tender is made before a demand of possession is made by the mortgagee, on the ground that his acquiescence in the continued possession of the mortgagor, without any assertion of his right under the forfeiture, is a waiver of the strict legal forfeiture according to the conditions of the mortgage, and that a tender before such demand made will therefore have the same effect

in law as though made on the day the money became due. It is clearly a good equitable defense to an action to recover the possession of the property. As an equitable defense to such action, the facts alleged are all the facts which would be necessary to allege in an action to redeem, if the property had been in the possession of the mortgagee, and are, therefore, under the code, a good equitable defense to the action of replevin. Had the appellants brought an action to redeem this property from the mortgage claim of the respondent, the allegations, that they had retained the possession of the property mortgaged, after condition broken, without objection on the part of the mortgagee; that before he demanded possession they had tendered to him the full amount due on the mortgage, with interest to the date of such tender; that they now brought the amount tendered into court for the use of the mortgagee; and that he refused to receive the sum tendered, and threatened to bring an action at law to recover the possession of such mortgaged property, — would certainly make out a case in favor of the plaintiff. The answer of the defendants sets forth, in substance, all these facts as a defense to the plaintiff's action; and, they having brought the money tendered into court for the benefit of the plaintiff, a complete equitable defense is established under the code, and must defeat the plaintiff's right to recover at law, if any ever existed in his favor.

Upon the whole evidence in the record, we are of the opinion that the learned circuit judge erred in directing a verdict for the plaintiff.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded for a new trial.