## PLACE and others vs. LANGWORTHY.

A mortgage of a stock of goods which authorizes the mortgagor to retain possession of the property and dispose of it in the regular course of retail trade, paying out of the proceeds *all necessary expenses of the business and of the support of the mortgagor and his family*, so long as he should deposit the excess to the credit of the mortgagee, is upon its face fraudulent in law and void as to creditors.

APPEAL from the Circuit Court for *Milwaukee* County.

This action was brought for the taking and conversion of a stock of goods. The plaintiffs claimed title under a mortgage executed to them by one Harshaw to secure a debt of $4142 97, due from him to them. The defendant justified the taking of the goods, as an officer, under certain writs of attachment issued against Harshaw at the suit of other creditors. The condition of the mortgage to the plaintiff was, in part, as follows: " Provided that if I, the said James Harshaw, from and after the date hereof, shall apply the entire proceeds arising from the sale of my said stock of goods in the ordinary and regular order of retail trade, and remaining after deducting therefrom all necessary store and business expenses, and the expenses for the support of myself and family, to the payment of the said sum of $4142 97, as fast as such proceeds shall come into my hands in money or otherwise, then these presents shall be void; and it is hereby fully and expressly agreed that I shall be at liberty to

continue my business and retail trade with the said stock of goods, in the usual course as heretofore, without interruption from said *James K.* and *E. B. Place*, or their assigns, so long as I shall faithfully apply the proceeds aforesaid, in manner aforesaid." "It is also understood and is made a part of the condition of this mortgage, that all the moneys which shall be collected by sales as aforesaid and be applied to the payment of said indebtedness, shall be daily deposited in the Juneau Bank in the city of Milwaukee, to the credit of *J. K. & E. B. Place*, as part payment," &c. It was also agreed that in case of the failure of the mortgagor to apply the proceeds of sales according to the agreement, the mortgagees might take possession of the goods and sell them at public sale upon five days' notice, and apply the proceeds to their debt, returning the residue, if any, to the mortgagor.

On the trial, the defendant requested the court to instruct the jury that the mortgage was, upon its face, fraudulent and void as to creditors; which instruction was refused. Judgment for the plaintiffs.

*Cary & Pratt*, for appellant, as to the invalidity of the mortgage as against creditors, cited *Edgell vs. Hart*, 5 Seld., 213; *Gardner vs. McEwen*, 19 N. Y., 123; *Griswold vs. Sheldon*, 4 Coms., 580; *Wood vs. Lowry*, 17 Wend., 470; *Collins et al. vs. Myers*, 16 Ohio, 547; *Freeman vs. Rawson*, 5 Ohio St., 1; *Walter vs. Wimer*, 24 Missouri, 63; *Brooks vs. Wimer*, 20 id., 503; *Stanley vs. Bunce*, 27 id., 269; *Billingsley vs. Bunce*, 28 id., 547; Burrill on Ass., 179; *Goodrich vs. Downs*, 6 Hill, 438; *Williston vs. Jones*, 6 Duer., 504; *Davis vs. Ransom*, 18 Ill., 396; *Harman vs. Abbey*, 7 Ohio, 218; *Robbins vs. Parker*, 3 Metcalf, 117.

*Waldo, Ody & Van Valkenburgh, contra*, contended that the mortgage was not void on its face, citing *Gay vs. Bidwell*, 7 Mich., 519; *Briggs vs. Parkman*, 2 Met., 258, 263–265; *Jones vs. Huggeford*, 3 id., 515–18; *Barnard vs. Eaton*, 2 Cush., 294; *Codman vs. Freeman*, 3 id., 306–9; *Mitchell vs. Winslow*, 2 Story, 630–46; *Abbott vs. Goodwin*, 20 Me., 408; *Melody vs. Chandler*, 12 id., 282; *Stedman vs. Vickery*, 42 id., 132; *Oliver vs. Eaton*, 7 Mich., 108; *Nye vs. Van Husan*, 6 id., 329; *Griswold vs. Sheldon*, 4 Coms., 589; *Rowley vs. Rice*,

11 Met., 333; 19 N. Y., 123; 40 Me., 561; *Cotton et al. vs.* January Term, *Frear et al.*, 3 Wis., 221. The question of fraud is a ques-  1861.
tion of *fact.* R. S., 1858, chap. 107, secs. 5–9; chap. 108, Place et al.
sec. 4.                                                           v.
                                                                  Langworthy.

*By the Court,* Cole, J.    The respondents derive title to    May 15.
the stock of groceries and provisions in controversy, under the
chattel mortgage given by James Harshaw, on the 6th day
of January, 1859. The controlling question in the case is as
to the effect and validity of that mortgage. The counsel for
the appellant contends that the mortgage is fraudulent and
void on its face on account of the provision therein contained
that Harshaw might retain possession of the stock of goods,
and trade with and sell them in the ordinary and regular
order of retail trade, applying the proceeds of the sale, after
deducting therefrom all necessary store and business expen-
ses, and the expenses for the support of himself and family,
to the payment of the mortgage debt, so fast as such proceeds
should come into his hands in money or otherwise. It is in-
sisted that this provision in the mortgage renders the instru-
ment fraudulent and void on its face, so far as the creditors
of Harshaw are concerned. This view of that provision in
the mortgage, we are disposed to adopt as the most satisfacto-
ry result at which we can arrive.

It must be admitted that the authorities are far from har-
monious upon the question as to the effect of analogous pro-
visions in chattel mortgages, when the mortgagor is author-
ized to retain possession of the goods mortgaged, and to
make sales of such property in the ordinary course of busi-
ness—some holding such stipulations illegal, and to be con-
clusive evidence of fraud, while others consider them only
as badges of fraud, which may be explained and reconciled
with an honest and fair intent to the satisfaction of a jury.
It is idle to attempt to reconcile these cases by any course
of reasoning or upon any principle of law. The following
are some of the cases where a stipulation in a mortgage, per-
mitting the mortgagor to retain possession of a stock of goods,
and to make purchases from time to time, and to sell off in
the ordinary manner, were held to be only *prima facie* evi-

dence of fraud, which might be rebutted by circumstances showing that the transaction was fair and honest. *Briggs vs. Parkman*, 2 Met., 258; *Jones vs. Huggeford*, 3 id., 515; *Barnard vs. Eaton*, 2 Cush., 294; *Abbott vs. Goodwin*, 20 Me., 408; *Oliver vs. Eaton*, 7 Mich., 108; *Gay vs. Bidwell*, id., 519.

The doctrine, I understand, is disapproved of in the following authorities, which hold that such a provision in a chattel mortgage in a stock of goods vitiates the instrument and renders it void in law. *Divver vs. McLaughlin*, 2 Wend., 596; *Wood vs. Lowry*, 17 id., 492; *Griswold vs. Sheldon*, 4 Coms., 580; *Gardner vs. McEwen*, 19 N. Y., 123; *Collins and McElroy vs. Myers*, 16 Ohio, 547; *Freeman vs. Rawson*, 5 Ohio State R., 1; *Harman vs. Abbey*, 7 id., 218; *Jordan vs. Turner*, 3 Blackf., 309. While such provisions in assignments for the benefit of creditors have generally been held to render such assignments void as to creditors. *Brooks vs. Wimer*, 20 Mo., 503; *Walter vs. Wimer*, 24 id., 63; *Stanley vs. Bunce*, 27 id., 269: *Billingsley vs. Bunce*, 28 id., 547; *Davis vs. Ransom*, 18 Ill., 396.

We are not aware that the supreme court of this state has ever had occasion to consider and pass upon the validity of a chattel mortgage, when the mortgagor was expressly authorized by the terms of the instrument to retain possession of the goods mortgaged—to sell the same in the ordinary course of business, and after paying the store and business expenses, and the expenses necessary to support himself and family out of the proceeds, then to apply the balance of such proceeds to the discharge of the mortgage debt. No such question was presented for adjudication in the case of *Cotton et al. vs. Frear et al.*, 3 Wis., 221, and of course was not decided. We are therefore unembarrassed so far as the decisions of our own courts are concerned, and are at liberty to adopt that rule on the subject which seems to us most safe, reasonable and proper. And we have therefore no hesitation in saying, notwithstanding the respectable authorities to the contrary, that a clause in a mortgage like the one under consideration, which expressly authorized the mortgagor to retain possession of the mortgaged goods, and to deal with

and dispose of them in the ordinary and regular course of retail trade, *paying out of the proceeds of the sales all necessary store and business expenses, together with all expenses for the support of the mortgagor and his family for an indefinite period,* so long as the excess, if any there was, was deposited to the credit of the mortgagees, is a provision directly calculated, in our judgment, to hinder, delay and defraud creditors, and therefore is strictly within the spirit of the statute of frauds. When the nature and character of a chattel mortgage is considered, there seems to be something incongruous and unnatural in the idea that it could attach to such variable and mobile elements as a stock of groceries and provisions, where the possession and power of disposition and of replenishing the stock remain with the mortgagor, and where the security cannot accurately be said to be a specific lien upon any particular property, but in the forcible language of Judge READ, as used in the case of *Collins vs. Myers, supra,* " the mortgage becomes a floating one, which attaches, swells and contracts as the stock in trade changes, increases and diminishes, or wholly expires by an entire sale and disposition at the will of the mortgagor." Not to dwell upon this point, however, and assuming a mortgage upon property thus circumstanced to be good and valid in law, still it appears to be going farther than the conveniences of trade and commerce require, or than the interests, rights and protection of third parties will justify, to sustain stipulations like the one we are now considering. For it seems to us that a provision that the mortgagor may continue in possession, and deal with and sell off the goods mortgaged, paying the expenses of the business and all personal and family expenses out of the proceeds of the sales—thus placing his stock in trade beyond the reach of creditors—of itself furnishes a pretty effectual shield to a dishonest debtor. It matters not how large his own expenses may be, or how much it may cost to support his family, those expenses all come out of the stock in trade before anything is applied to the payment of even the mortgage debt. An arrangement of this nature ought not to be tolerated, and when it appears

January Term, 1861.

upon the face of the instrument, it should render it void in law.

It was contended by the counsel for the respondents, that the court cannot pronounce the mortgage void upon its face, except where its provisions are necessarily injurious to the creditors of the mortgagor. But even within this strict and rigid rule, we think we are authorized in saying, that an agreement which permits the debtor to support himself and family out of the proceeds of the business, must unavoidably be injurious to the creditors. For however extravagant and unreasonable those expenses may be, they are to be paid. Such stipulations, therefore, we deem fraudulent in law. And inasmuch as it appears on the face of the instrument itself, which the court must construe, the court can say and is authorized to pronounce the stipulation illegal.

We are therefore of the opinion that the circuit court erred in holding that the mortgage was not fraudulent and void as to creditors on its face, but was a valid, legal and binding instrument. This was expressly ruled, both in refusing the instructions asked for on that point by the appellant, and in the general charge of the court.

For this reason the judgment of the circuit court must be reversed, and a new trial ordered.