## OLIVER vs. TOWN and another.

BILL OF EXCEPTIONS.   (1) *On what proof stricken out as not settled in due time.*

ATTACHMENT.   (2) *Form of affidavit in justice's court.*   (3) *When treated as an abuse of process.*   (4) *When good as against prior chattel mortgage.*

1. A bill of exceptions will not be stricken out as not having been settled within sixty days after notice of the judgment was served, unless there is clear and satisfactory evidence of such service.

2. In this case the evidence of the service being merely a docket entry thereof in the books of respondent's attorney, with proof of the custom of the office in regard to such entries, and appellant's attorney having made affidavit that the notice was not served upon him personally or at his residence, and that it was not left, to his knowledge, at his office, although he kept constant watch for it — the motion to strike out is denied.

3. An affidavit for an attachment in justice's court, which states that defendant is indebted to plaintiff "in the sum of $100, as near as may be, over and above all legal set-offs, and that the same is due upon express contract," states the fact and amount of indebtedness with sufficient certainty.

4. This court cannot hold that an attachment of goods was an abuse of process on the ground that the value of the goods seized was greatly in excess of the attaching creditor's claim, where the bill of exceptions does not give all the evidence as to the value of the goods, and does not show that the question was raised in the court below.

5. The jury were instructed that if a mortgage of chattels, under which plaintiff claimed, was for an honest debt, and plaintiff took possession primarily to secure his debt, and without any fraudulent intent, this rendered the mortgage valid as against the defendant, a subsequent attaching creditor.   *Held,* that there was no error of which plaintiff could complain.

APPEAL from the Circuit Court for *Fond du Lac* County. Action by *John Oliver* against *Hiram S. Town* and *James L. Watson,* for the unlawful taking and conversion of goods. Plaintiff claimed the goods under a mortgage from Frank S. Oliver; and defendants under an attachment issued from justice's court, in an action by *Watson* against Frank S. Oliver.   The

attachment was subsequent in date to the chattel mortgage, and was levied by *Town* as sheriff.

The defendant requested an instruction, that if the mortgage was recorded and filed, and the mortagee was in possession under it at the time of the seizure by defendants, and if it was executed in good faith, and for a valid and subsisting debt, and was unpaid, then defendants were liable. This the court refused, but instructed the jury as follows :

" If, at the time the mortgage was given, to secure the payment of $2,290, is was understood and agreed between the mortgagor and the mortgagee, that the mortgagor should remain in possession and sell the same in his usual course of trade and business, and apply the proceeds of the sales on the payment of his other debts, and for the support of himself and family, and for paying off his clerks and workmen, and for the purchase of new stock and goods ; and the mortgagor did, after the execution and filing of the mortgage, go on with the the knowledge and assent of the mortgagee, and sell and dispose of the mortgaged goods in the usual course of his trade and business, and apply the moneys received on such sales to the support of himself and family, to the payment of his workmen, to the purchase of new stock and payment of debts, then such mortgage is in law fraudulent and void as to the creditors of Frank Oliver.

" A mortgage given upon a stock of goods, accompanied with such an agreement between the mortgagee and mortgagor as above stated, and followed up by the continued possession of the mortgaged property by the mortgagor, and carrying on his business in the same way as if no mortgage on his stock existed, with the knowledge and assent of the mortgagee, is in law fraudulent and void as to creditors, because it necessarily tends to defraud, hinder and delay the other creditors in the collection of their just debts.

" And if the mortgagor was permitted to remain in possession of the mortgaged stock, treating it as his own, and in the same manner as before the mortgage was executed, selling and buy-

ing and appropriating the money to his own use as usual, the subsequent taking possession of the mortgaged property by the mortgagee, upon such a mortgage, when he ascertained that other creditors were about to proceed against the mortgagor to collect their debts, or when he ascertained that the mortgagor was about to go into bankruptcy, if the jury find that such taking possession was to prevent the other creditors from collecting their debts, and not with a *bona fide* purpose of securing an honest debt of his own, would not render the mortgage valid against the creditors of the mortgagor.

" A mortgage given upon a stock of goods, with a provision that it should cover subsequently acquired goods, is void as to goods subsequently purchased by the mortgagor, as against the creditors of the mortgagor, unless it shall be shown by the evidence that such subsequently obtained property had been delivered to the mortgagee and he was in actual possession of the same when the creditors attached.

" If the jury finds, from the evidence in this action, that the mortgage was given by Frank to *John* to secure the payment of an honest debt of $2,290, which Frank then owed to *John*, and with an agreement that Frank should remain in possession and sell the goods mortgaged and pay over the proceeds of the sale to *John* on his mortgage, such a mortgage, so made, and with such an agreement, would not in itself be fraudulent and void, even though the mortgagor remained in possession, and sold the goods as before the mortgage was given, unless the jury further find that the mortgage was given by the mortgagor and received by the mortgagee with intent to cover the property mortgaged, and to defraud, hinder or delay the other creditors of the mortgagor.

" And should you find that the agreement was as above stated, that the mortgagor should sell and account for and pay over to the mortgagee the money received in such sales, and the evidence further shows that after the mortgage was given the mortgagor went on and sold the mortgaged goods and con-

ducted the business as before the mortgage was given, and as though there were no mortgage, and, instead of paying over the money to the mortgagee, applied it to the support of his family, the purchase of other stock, the payment of his employees and his other creditors, and this was done with the knowledge and assent of *John*, then such subsequent conduct of the mortgagor, assented to by the mortgagee, would be strong evidence tending to prove the transaction fraudulent and void as to the creditors of Frank, unless it is explained in some way so as to satisfy you of the good faith of the mortgagee.

"If the jury find from the evidence that *John Oliver*, the mortgagee, did not take possession of the mortgaged goods until he learned that the creditors of Frank, the mortgagor, were about to proceed to collect their debts, or until he found that the mortgagor was about to go into bankruptcy, and that such knowledge of the contemplated action of the other creditors, or of the mortgagor, was the primary motive which induced the plaintiff to take possession of the mortgaged goods, and his primary motive was not to secure his own debts, such taking possession of the mortgaged property would not render the mortgage valid, if it was invalid before as to the creditors of the mortgagor.

"If the mortgage was for an honest debt, and the plaintiff took possession of the stock primarily to secure his debt and without fraudulent intent, such taking of possession made the mortgage valid against a subsequent attaching creditor."

.Verdict for the defendants; new trial denied; and judgment upon the verdict; from which plaintiff appealed.

*Gerrit T. Thorn*, for appellant, argued that the attaching of $1,200 worth of goods for a debt of $100 made the defendants trespassers *ab initio* (*Six Carpenters' Case*, 8 Co., 146); that the affidavit was not sufficiently clear and positive to sustain the writ (*Quarles v. Robinson*, 1 Chand., 29; *Lathrop v. Snyder*, 16 Wis., 293; *Talbot v. Woodle*, 19 id., 174; *Ackroyd v. Ackroyd*, 20 How. Pr. R., 91, and 11 Abb. Pr. R., 345); that to justify

the taking under the attachment in this case, it must appear that the writ and all the proceedings on which it was founded were perfectly regular (*Thornburgh v. Hand*, 7 Cal., 554); that there was no evidence to sustain the charge of fraud as to the chattel mortgage; and that the court erred in refusing the instruction asked by the plaintiff.

*Knowles & Babcock*, for respondents, argued that when attacked collaterally the writ itself was a sufficient shield to the officer (*Bogert v. Phelps*, 14 Wis., 88); that the affidavit was sufficient to support the writ; that the existence of the indebtedness in the attachment, was at least shown by the evidence in the present action, and "the sheriff may show that he represents a prior creditor by any evidence that would establish that fact in an action by the creditor against the debtor himself (2 Greenl. Ev., 5th ed., § 597; *Hall v. Stryker*, 27 N. Y., 596; *Rinchey v. Stryker*, 28 id., 45; Crocker on Sheriffs, 2d ed., §§ 866, 867); and that in any event, the goods having been attached upon the mortgagor's premises, the burden of proof was upon the plaintiff (Laws of 1864, ch. 458); that by the settled law of this state, the mortgage was void as to creditors (*Place v. Langworthy*, 13 Wis., 629; *Steinart v. Deuster* 23 Wis., 136); and that in its instructions as to the effect of the mortgagee's act in subsequently taking possession, in giving validity to the mortgage, the court erred in the appellant's favor. *Edwards v. Harben*, 2 Term, 587; *Bailey v. Burton*, 8 Wend., 351; *Delaware v. Ensign*, 21 Barb., 85; *Griswold v. Sheldon*, 4 N. Y., 583; 1 Campb., 332; 1 Esp., 205; *Wood v. Lowry*, 17 Wend., 495; *Gardner v. McEwen*, 19 N. Y., 125; *Russell v. Winne*, 37 id., 593; *Conkling v. Shelley*, 28 id., 360.

COLE, J. A motion was made to strike out the bill of exceptions, which motion was submitted with the cause itself upon the argument. The ground of the motion is, that the bill was not settled within sixty days from the service of written

notice of the entry of judgment. The evidence tending to show that such written notice was served by the counsel for the defendants, while it renders it highly probable that such was the fact, yet is not entirely satisfactory and conclusive upon that point. It is to be observed that Mr. Babcock, whose affidavit is mainly relied upon to show the service of the written notice, nowhere positively swears that he made such service. He does, however, state the method of doing business by the firm of which he is a member, and testifies to the fact that they keep a docket in which is entered the title of each cause in which they are employed as attorneys, and that under the title of each action is noted the time when any paper or process is served or received by them. And it appears that under the title of this cause, and in its regular order, is an entry upon this docket to the effect that written notice of the entry of judgment was served on Mr. Bragg, the attorney for the plaintiff, on the 28th of December, 1868. But Mr. Bragg, on the other hand, swears quite positively that no written notice was ever served upon him personally, or at his residence, and that none was ever to his knowledge left at his office where he saw it, although he "kept a constant watch for the same." It is true, this is in its character negative testimony, and would not overcome a positive statement that the notice was served at the office, had such a statement been made by Mr. Babcock in his affidavit. But as it is, the question is left in some doubt, and we have therefore concluded to deny the motion to strike out the bill. For it is not going too far to require of a party seeking to strike out a bill of exceptions because not settled within the time allowed by statute, that he should establish the fact that it was settled out of time by clear and satisfactory evidence. And this brings us to a consideration of the cause upon the merits.

The plaintiff based his right to recover the value of the property which was taken by the defendants, upon the chattel mortgage executed by Frank S. Oliver to him, dated March 26, 1868. The defendants justified taking the property under

a writ of attachment issued against the mortgagor in favor of the defendant *Watson*, who was his creditor. The plaintiff objected, on the trial, to the admission in evidence of the affidavit upon which the writ of attachment issued, because it showed no positive indebtedness on the part of Frank S. Oliver, the defendant therein named, to the plaintiff, and was therefore void for uncertainty. The affidavit stated that the defendant was "indebted to the plaintiff in the sum of $100, as near as may be, over and above all legal set-offs, and that the same is due upon express contract." This was following literally the language of the statute in stating the indebtedness (sec. 99, chap. 120, R. S.), and we think was sufficient. It was equivalent to a positive and distinct statement that the defendant was indebted in the sum of $100, over and above all legal set-offs, and that the same was due upon express contract. The language used is not fairly susceptible of any other interpretation, and this is its natural and most obvious meaning. And to say that the qualifying phrase "*as near as may be*" leaves the matter in doubt whether anything was actually due the plaintiff from the defendant, and if so, the true amount, is quite too great a refinement upon language to be adopted. Again it is insisted that the evidence shows that the defendants were guilty of an abuse of the process of court, by attaching upon the writ property of the value of $1,200, to satisfy a claim of $100, and therefore were trespassers *ab initio*. It is, however, a sufficient answer to this argument to say that it does not appear from the evidence what the value of the property taken upon the writ was. Frank S. Oliver testified that he made an invoice of the goods taken by the sheriff which was covered by the mortgage, and that they amounted to about $1,200. But the bill of exceptions does not purport to contain all the testimony given on the trial. And further, it is stated in the bill that the defendants introduced "other testimony tending to greatly reduce the value of the goods taken by the sheriff." The record does not show that any question of this kind was raised in the

Oliver vs. Town and another.

court below, that the defendants had been guilty of an abuse of the process of the court in making an excessive levy. In this state of the record, then, we cannot say that the defendants were trespassers *ab initio*, and that the attachment afforded no justification or warrant for seizing the property.

It is very obvious that the defense relied on in the court below to defeat the action was, that the chattel mortgage was fraudulent and void as to the creditors of the mortgagor. The evidence bearing upon the question as to the validity of the mortgage seems to have been submitted to the jury by the circuit court in a very full and lucid charge as to the law applicable to the case. If the charge is open to any criticism, it is that in one or two particulars it is possibly more favorable to the plaintiff than the authorities would warrant. But even if there were any error of this kind in the charge—and we do not wish to be understood as saying that there is—it would furnish no ground for a reversal of the judgment. The plaintiff insists that the instruction asked by him to the effect that, the mortgagee being in possession under the mortgage when the goods were seized on the writ of attachment, if the mortgage was executed in good faith for a valid subsisting debt, then the defendants were liable for the goods taken. This is the substance of the instruction. The circuit court instructed the jury, among other things, that if the mortgage was for an honest debt, and the plaintiff took possession of the stock primarily to secure his debt, and without any fraudulent intent, then such taking possession made the mortgage valid against a subsequent attaching creditor. It was claimed, on the one hand, that the mortgage was void upon its face, and on the other that possession by the mortgagee for a subsisting debt rendered the mortgage valid as against the creditors of the mortgagor. The court made the intent with which the mortgagee took possession an element in determining his right to hold the property under the mortgage, and as affecting the validity of the instrument. We

think there was nothing in this of which the plaintiff could complain.

*By the Court.*— The judgment of the circuit court is affirmed.