## BLAKESLEE VS. ROSSMAN.

CONTRACTS: CHATTEL MORTGAGE: SHIFTING OF TITLE: COURT AND
JURY. *(1) Contemporaneous agreements touching same matter. (2)
Contract construed. (3-5) When chattel mortgage void as to creditors.
Possession of mortgagee confers no additional right. (6) Court and jury.
(7) Shifting title from mortgage to payment or pledge.*

1. A chattel mortgage and a written agreement to govern the same subject
matter between the parties, executed contemporaneously, must be treated
as one contract.

2. Where such a contract mortgages to creditors a merchant's entire stock of
goods, licensing the mortgagor to remain in possession and dispose of the
goods in the course of his trade, and apply one-half of the proceeds of
the sales upon his liability to the mortgagees, without making any pro-
vision for the disposition of the other half, this in effect leaves such oth-
er half at the absolute disposal of the mortgagor for his own use.

3. A chattel mortgage permitting the mortgagor to remain in possession,
and to sell, and apply the proceeds, or any part of them, to his own use,
is fraudulent and void in law as against creditors.

4. The act of the mortgagee, under such a mortgage, in *taking possession*
upon default, cannot give him a valid title against creditors.

[5. The mortgage itself, as put on record, purported to cover the entire stock,
for money lent to the mortgagor; but the contemporaneous agreement,
not recorded, shows it to be in effect a mortgage of half the stock, for
indemnity against liabilities assumed by the mortgagees. *Quære,*
whether such failure of the record to disclose fully the consideration and
nature of the lien would not avoid the mortgage as against creditors.]

6. The mortgage being void in law, as against creditors, in a controversy be-
tween one claiming under it and a creditor of the mortgagor, there is no
question for the jury of good faith in fact.

7. While the holder of a chattel mortgage may relinquish his rights as such,
and accept the chattels from the mortgagor in payment of his debt, or as
a pledge, such a shifting of title must be open, express and explicit—
both debtor and creditor being expressly parties to the payment or pledge,
and their acts in that behalf established as expressly and satisfactorily as
payment or pledge in any other case.

APPEAL from the Circuit Court for *Clark* County.

Action for the unlawful taking, etc., of a stock of merchandise,
alleged to have been plaintiff's property, and for damages to

plaintiff's remaining goods and to his business by such taking. Defendant, as sheriff, justified under executions against the property of one Farnham, alleging that the goods belonged to Farnham.

On the 7th of August, 1874, Farnham was a merchant in business at Neillsville. He had become embarrassed in business, and was then trying to effect a compromise with his creditors. On that day he called on the plaintiff and one Thayer, and one Kingman, and desired them to indorse his paper for the purpose of carrying out such compromise. They thereupon indorsed his notes to his creditors to an aggregate amount of between $8,000 and $10,000; and, as security for such indorsement, Farnham executed to them a mortgage for $3,500 on real property, and another mortgage, for $6,500, on his stock of goods, " and also all goods, wares and merchandise which shall [should] be purchased and added to the [then] present stock " during the existence of the mortgage, with a clause authorizing the mortgagee to take possession in case he deemed himself insecure, and to sell at public or private sale. At the same time, and as a part of the transaction, the parties to the mortgage executed a contract, which, among other things, contains the following provisions: " And for further security, said Farnham has agreed, and has this day executed to said second party a chattel mortgage of all the goods, wares and merchandise added to said stock during the continuance of said mortgage, and agrees to keep said stock of goods insured for the sum of $10,000 in good and responsible companies for the benefit of said second party, and hereby agrees to quit and deliver up possession of said store and goods peaceably at any time the said second party shall deem themselves insecure, or at any time said Farnham shall fail to deposit as hereinafter specified; and the said Farnham further agrees to deposit with W. C. Allen, of Neillsville, Clark county, Wis., in the name of M. A. Thayer & Co., one half of all the proceeds of notes and accounts now in his possession,

amounting to about $5,000, to be applied in payment of said indorsed notes; also further agrees to deposit with W. C. Allen one-half of all the proceeds from the sale of goods in said store, to be deposited weekly, and a full statement of said notes and deposits rendered to said secured party every week." The chattel mortgage was duly recorded; the agreement was not. There was also an oral agreement that the other fifty per cent. of the sales should be used in keeping up the stock and paying the expenses of the store.

After this arrangement, Farnham continued to conduct the business, and added to the stock considerable amounts of goods purchased on credit; and the debts due the parties under whose judgments defendants seized the goods, were contracted for that purpose. He paid the indorsed notes due in three months, and most of those due in six months, but failed to make the third payment of notes; and, about April 1, 1875, the plaintiff called on him for the possession of the goods. Plaintiff testified that he took possession of the store by its being turned over to get money out of the goods to pay the debts; that he had heard Farnham was not going to carry out the agreement in good faith; that he did not take possession under the chattel mortgage, nor under the contract; that when he refused to let Farnham have any more money, Farnham said all he could do was to deliver up to plaintiff the stock of goods; that this conversation took place in the evening, and the following morning possession was delivered; that the possession was given by Farnham to Wells, the deputy sheriff, who was acting for the plaintiff and Kingman and Thayer; and that Farnham said he would prefer to deliver possession to the sheriff, because it would look better to his creditors.

Kingman testified substantially in the same manner, and stated, among other things, the following: "Farnham was there, and said he did not like to give up possession voluntarily, and said we should let the sheriff take the goods, and he should turn them over to us. It might look as if something

was wrong if it was voluntary on his part, and it was a matter of form only. I think he spoke to Wells, the deputy sheriff, and I did also, that morning. Wells came in, and Farnham turned the goods over to him, and he immediately turned them over to us. That was done right there . in the store, all present. He gave up the keys to the sheriff, and he passed them over to us. After we got possession, we locked the doors. There was nothing in particular done but to look over the accounts and see what we had, and, by talking with the clerks, see what was needed. We hired the clerks to go on and close out that stock of goods. Our object was to get money out of the goods to pay the paper, if possible. We stocked up and carried on the business until some time in July following. I disposed of my interest some time in July, previous to this seizure by the sheriff. I mean myself and Thayer."

Wells testified, in substance, that he was employed by the plaintiff, who gave him a copy of the chattel mortgage, to take the goods into possession under the same, and that he did so. It further appeared that about thirty days afterwards, plaintiff caused the goods to be advertised and sold under the chattel mortgage, and they were bid off by him. Considerable testimony was introduced as bearing upon the value of the goods at different times, the amount of the notes indorsed and paid by plaintiff, and the question of actual fraudulent intent.

The following instructions are sufficient to show the nature of the charge:

"It is claimed by the defendant that the mortgage under which plaintiff claims is on its face void, as against the creditors of Farnham. The mortgage is undoubtedly void as to the creditors of Farnham, but it is valid between the parties as to all the goods in the store at the time it was executed; and, as to the goods thereafter acquired, it was valid as a license to take them for the purpose of such security, until it was expressly revoked by Farnham. Defendant also claims

that the mortgage was executed in bad faith and with intent to defraud, hinder and delay Farnham's creditors. If that be true, it was void as to all such creditors. Upon this question of actual fraudulent intent, the burden of proof is upon the defendant. Fraud is a fact to be proved. It is never to be presumed, nor is it found upon slight evidence, but should be proved to the satisfaction of the jury by a fair preponderance of testimony. If you shall believe the mortgage was in fact given with intent to defraud, hinder or delay Farnham's creditors, and that the plaintiff and Kingman and Thayer knew of such intention on Farnham's part, and that, in pursuance of such purpose, the mortgagees reduced the goods to their possession, then the mortgage and such possession are void, and no protection against the lawful proceedings of Farnham's creditors. But if you shall believe that the mortgage was made in good faith, to secure the plaintiff, Thayer and Kingman against loss, by reason of their *bona fide* indorsement of his paper, and not for the purpose of hindering, delaying or defrauding Farnham's creditors, and that the plaintiff, Thayer and Kingman afterwards took possession of the goods primarily to secure themselves against loss on account of such indorsements, and to repay themselves for money which they were obliged to pay upon such indorsements, and without any intent to hinder, delay or defraud the other creditors of Farnham, and that plaintiff afterwards bought the interest of Kingman and Thayer, then plaintiff has a valid title to the goods as against the other creditors of Farnham, and should recover in this action."

Verdict for the plaintiff; new trial denied; and, from a judgment on the verdict, defendant appealed.

For the appellant, a brief was filed by *O'Neil & Sheldon*, with *Gregory & Pinney*, of counsel, and the cause was argued orally by *Mr. Pinney*. They contended that it clearly appeared from the evidence that plaintiff took possession under the mortgage; that the mortgage and contemporaneous writ--

ten agreement must be taken together, as one contract; and that such contract was void upon its face, the presumption of law against it conclusive, and the actual intent immaterial. *Robinson v. Elliott*, 22 Wall., 513, 524–5; *Place v. Langworthy*, 13 Wis., 629; *Seymour v. Wilson*, 14 N. Y., 569; *Fiedler v. Darrin*, 50 id., 443; *Steinart v. Deuster*, 23 Wis., 136, 138; *Edgell v. Hart*, 5 Seld., 213; *Russell v. Winne*, 37 N. Y., 591, 595; *In re Manly*, 2 Bond, 260, 265–6; *Johnson v. Johnson*, 2 Woods, 443; *In re Forbes*, 5 Bissell, 510, 513. 2. The testimony is overwhelming that the plaintiff took possession under the chattel mortgage. No valid use can be made of such a void instrument. *Mittnacht v. Kelly*, 3 Keyes, 407; *Russell v. Winne*, 37 N. Y., 591, 595–6; *Harvey v. Crane*, 2 Biss., 496; *Smith v. Ely*, 10 Bank. Reg., 260, 563, 591; *Robinson v. Elliott, supra; Bank of Leavenworth v. Hunt*, 11 Wall., 391; *Goodrich v. Downs*, 6 Hill, 438, 440, and cases there cited; *Mackie v. Cairns*, 5 Cow., 547, 580; *Grover v. Wakeman*, 11 Wend., 187, 225, 226; *In re Burrows*, 5 Cent. Law J., 241; *Twyne's Case*, 3 Coke, 80; Southern Law Rev., January, 1877, p. 731; *Putnam v. Osgood*, 52 N. H., 148; *Cooledge v. Melvin*, 42 id., 510; *Catlin v. Currier*, 1 Sawyer, 7–14; *Denney v. Dana*, 2 Cush., 160; Bump on Fraud. Con., 478, 124, 125, and cases cited; *Edgell v. Hart*, 5 Seld., 213; *Gardner v. McEwen*, 19 N. Y., 123; *Steinart v. Deuster, supra; Place v. Langworthy*, 13 Wis., 629. As to after acquired goods, Farnham's refusal to turn over the goods amounted to a revocation of any license which might have been implied. *Chynoweth v. Tenney*, 10 Wis., 403–411; 11 id., 207; 20 id., 398; 21 id., 417; *Moody v. Wright*, 13 Met., 17; *Jones v. Richardson*, 10 id., 481, 493–4.

For the respondent, a brief was filed by *McBride & Grundy* and *Tyler & Dickinson*, and there was oral argument by *S. N. Dickinson*. They contended that the mortgage and contract, in respect to after acquired goods, *constituted a license* until revoked (*Chynoweth v. Tenney*, 10 Wis., 397; *McCaffrey v.*

*Woodin*, 65 N. Y., 459, and cases there cited; *Rowley v. Rice*, 11 Met., 333; *Chapman v. Weimar*, 4 Ohio St., 481; *Moody v. Wright*, 13 Met., 29); that the clause relating to such after acquired goods did not invalidate the mortgage, as such, in respect to the stock on hand at the time of its execution (*Chynoweth v. Tenney, supra*; *Farmers' L. & T. Co. v. Commercial Bank*, 11 Wis., 207; *Single v. Phelps*, 20 id., 398; *Mowry v. White*, 21 id., 417; *Moody v. Wright*, 13 Met., 17; *Brown v. Thompson*, 59 Me., 372; *Gardner v. McEwen*, 19 N. Y., 123; *Yates v. Olmsted*, 56 id., 632); that in the Wisconsin cases cited by appellant's counsel, the mortgagor had an unrestricted right to deal with the goods as his own, without being obliged to account for the proceeds, and those cases are not applicable; that the mortgage and contract in this case had no fraudulent tendency, but tended to assist creditors, and not to delay them; and that the question of fraud in cases like this is always for the jury. *Ford v. Williams*, 24 N. Y., 359; *Conkling v. Shelly*, 28 id., 360; *Miller v. Lockwood*, 32 id., 293; *Frost v. Warren*, 42 id., 204; *Yates v. Olmsted*, 56 id., 632; Herman on Chat. Mort., 242. They further cited *Read v. Wilson*, 22 Ill., 377, and *Brown v. Webb*, 20 Ohio, 389, as showing that the *possession* of the mortgagees was sufficient to protect them.

RYAN, C. J. The chattel mortgage and accompanying agreement, contemporaneously executed, to govern the same subject matter between the parties, must be taken together and dealt with as one contract. *Elmore v. Hoffman*, 6 Wis., 68; *Norton v. Kearney*, 10 id., 443.

So taken, they give a mortgage by a merchant to creditors of his entire stock of goods, licensing the mortgagor to remain in possession and dispose of the goods in the course of his trade, applying one-half of the proceeds of the sales towards his liability to the mortgagees. No provision is made in either paper for the disposition of the other half, which is therefore left

at the absolute disposal of the mortgagor for his own use. It is vain for the respondent to say that the mortgage contains no express agreement for the mortgagor's use of half of the proceeds. The silence of the mortgage gives him the right as effectually as express agreement could. Having applied one-half to the use of the mortgagees, and made no provision for the other, the mortgage leaves that absolutely with the mortgagor. He might hold it in money or lend it, or invest it at his pleasure, without breach of contract with the mortgagees, who take no right under the mortgage to it or over it. He made the mortgage for payment of one-half only of the proceeds, while he should remain in possession. He retained the other half as effectually as he would have retained half of the goods, had he mortgaged but half.

It is quite unnecessary to consider what may be the rule elsewhere, though it is very generally, if not universally, the same as here. The validity of such a mortgage is not an open question in this state. A chattel mortgage permitting the mortgagor to remain in possession, to sell and apply the proceeds or any part of them to his own use, is fraudulent and void in law as against creditors. *Place v. Langworthy*, 13 Wis., 629; *Steinart v. Deuster*, 23 id., 136.

There is another objection to the mortgage, which might be sufficient, of itself, to avoid it. Secret liens on chattels remaining in possession of the owner, are against the policy of the law. For this reason, when possession remains in the mortgagor, a chattel mortgage must be put on record to give it effect against creditors of the mortgagor. The mortgage should therefore fully disclose the consideration upon which it goes, and the nature of the lien given. It appears here that the mortgage itself was put on record, but not that the accompanying agreement was. It is quite evident that the mortgage, of itself, not only did not disclose the true nature of the transaction, but was calculated to conceal it, and to mislead, without notice of the accompanying agreement. The mort-

gage itself purports to cover the entire stock, for money lent to the mortgagor; while the agreement discloses that it is, in effect, a mortgage of half the stock, for indemnity against liabilities assumed by the mortgagees. This alone might avoid the mortgage as against creditors. *Butts v. Peacock*, 23 Wis., 359.

But we prefer to rest our judgment on the ground first stated. The license given to the mortgagor, to retain half the proceeds and use them at his pleasure, makes the written contract of the parties fraudulent and void in law as against creditors; absolutely void as to them, beyond all aid from extrinsic facts. Parol evidence can make it neither better nor worse. Intent does not enter into the question. Fraud in fact goes to avoid an instrument otherwise valid. But intent, *bona fide* or *mala fide*, is immaterial to an instrument *per se* fraudulent and void in law. The fraud which the law imputes to it is conclusive. So a fraudulent agreement of parties, by parol, goes as fraud in fact to impeach a written instrument valid on its face. Fraud in fact imputed to a contract is a question of evidence; not fraud in law. And no agreement of the parties in parol can aid a written instrument fraudulent and void in law. *Wood v. Lowry*, 17 Wend., 492; *Edgell v. Hart*, 9 N. Y., 213; *Robinson v. Elliott*, 22 Wall., 513. We doubt whether the parol understanding as to the disposition of the other half of the proceeds, with which the respondent undertook to supplement the written contract, would have redeemed it from the taint of fraud in law, if inserted in it. But it is very certain that the attempt to show it in aid of the mortgage, was an attempt to vary the written contract by parol. This appears too familiar to need even statement, much less discussion. And yet the elementary principle appears to have been overlooked in the court below.

Apparently apprehensive of its validity, the respondent tried to purge his title of the fraudulent mortgage. He undertook to show that the mortgagor voluntarily surrendered possession

to the mortgagees, his creditors, without respect to the mortgage. Whether he claimed such surrender as a payment or as a pledge, is left uncertain. And the very uncertainty goes to disprove either. Indeed, there is a strong presumption that this was an afterthought. All the evidence of the circumstances of the transfer of possession exclude such a theory. The mortgagor appears to have been hopeless of going on with his business, and willing that the mortgagees should take possession, but unwilling voluntarily to surrender it. He thought it would look better for him that the sheriff should take possession under the mortgage. And so the mortgagees employed the sheriff to take possession, giving him a copy of the mortgage; and the sheriff, with the copy and under it, demanded and received possession from the mortgagor, and delivered it over to the mortgagees. The act of the sheriff was of course unofficial; he was the mere agent of the mortgagees. So that, as matter of fact and of law, the mortgagees took possession under the mortgage, as was their right as between them and the mortgagor. *Frisbee v. Langworthy*, 11 Wis., 375; *Huebner v. Koebke*, 42 id., 319. We do not hold that the holder of a chattel mortgage may not relinquish his right under it, and accept the mortgaged goods from the mortgagor, in payment of his debt or as a pledge. Such a transaction might be upheld in a proper case. But we do hold that such a shifting of title must be open, express and explicit; as open, express and explicit as the mortgage itself; and that one who takes possession of chattels, apparently under a mortgage, cannot, when the mortgage fails him, shift his right of possession, by vague evidence of implied understanding, to payment of his debt or to a pledge for it. Both debtor and creditor must expressly be parties to either payment or pledge. And either must be established by the acts of the parties at the time, as expressly and satisfactorily as payment or pledge in any other case. Here there is no such evidence. And the subsequent course of the respondent in

selling the goods under the mortgage, himself becoming the purchaser, for the evident purpose of changing his title as mortgagee in possession to title as owner, is quite inconsistent with previous possession upon either payment or pledge. The respondent fails to establish any *prima facie* right of possession, except under the mortgage.

The charge of the learned judge of the court below does not go upon any shift of the respondent's title from under the mortgage. It recognizes the mortgage throughout as the foundation of the respondent's right. But it appears inadvertently to confound fraud in fact and fraud in law, as affecting the mortgage. The learned judge charged the jury that the mortgage is void on its face; that is, void in law. But he proceeds, nevertheless, to submit the good or bad faith with which the mortgage was executed, as a question of fact for the jury; instructing them that it is valid, if executed in good faith; invalid, if executed in bad faith.

· Without expressly saying it, the charge seems to imply, as was argued here, that possession of the mortgagees, under the mortgage, would operate to cure the fraud imputed to it by law. It is a novel and startling proposition that possession under an instrument of title can be better than the instrument of title itself. But strange to say there is authority for the position. *Read v. Wilson*, 22 Ill., 377; *Brown v. Webb*, 20 Ohio, 389. In each of these cases, a chattel mortgage appears to be held void in law, but possession under it good, as against creditors.

In neither of those cases, nor in this, would mere possession by the mortgagor, before maturity of the mortgage, *proprio vigore*, import fraud in fact or in law. And so the validity of the mortgage does not rest on the mere fact of possession in either mortgagor or mortgagee. It is the fraudulent provision for possession which taints the mortgage with fraud, and makes it void as against creditors. It is not because the fraudulent possession . remains in fact in the mortgagor, but be-

cause the mortgage provides that it shall so remain, that all courts, everywhere, we may say, hold the mortgage fraudulent and void as against creditors. The judgment of law goes upon construction of the paper, without inquiry of fact outside of the paper. As against creditors, the paper is void from the beginning, and remains void always. No change of possession can purge it of the fraudulent provision, or operate to make that valid which was void before. Before and after possession taken, the title of the mortgagee rests equally on his mortgage, and the question between him and creditors of his mortgagor is equally upon the validity of his paper title. The title accompanies the possession and enters into it, and the possession rests on the title. The mortgagee's possession, under the mortgage, is just as good or as bad as the mortgage itself. And no court possesses power to transmute a void mortgage into a valid pledge. *Robinson v. Elliott, supra.*

It is true that, upon the default of the mortgagor, the legal title to the chattels mortgaged is held to vest in the mortgagee. But under a mortgage like that here, it is legal title *sub modo.* The mortgagee cannot apply the subject of the mortgage in absolute payment of his debt. He must sell it, applying the proceeds on his debt, and accounting for the surplus to the mortgagor. And so his title and possession are executory, very much like a sheriff's upon execution. He must justify his possession and the execution of the duties of his possession, like a sheriff. And he can no more do so against creditors, upon a mortgage void as to them, than a sheriff can justify his possession and proceeding upon void process.

The radical error, perhaps, in the cases cited for the respondent, more apparently so in the case in Illinois, seems to rest upon the theory that provision for disposal of the mortgaged goods by the mortgagor to his own use, is indeed fraudulent and void in and by itself, but does not taint the entire

mortgage with fraud; and that possession, once taken by the mortgagee, operates to purge the mortgage of the fraudulent provision. We need not cite authorities to show that a fraudulent provision for possession and use by the mortgagor infects the entire mortgage, and avoids it wholly as to creditors.

If it were imputed as fraud in fact against a mortgage fair on its face, that the mortgagee had suffered the mortgagor to sell the goods mortgaged, and dispose of the proceeds to his own use, possibly subsequent possession taken by the mortgagee might go to uphold his good faith, and to rebut fraud in fact. But nothing which a party claiming under a title fraudulent and void in law can do, will go to better his title. While in possession under a void title, he may sometimes acquire another which is valid. But we recall no way in which possession is held to better the title under which it is taken, except by operation of the statute of limitations.

It is not necessary to comment on respondent's sale to himself. It could not better his title, however made. As made, it appears to be a mere nullity.

As there seems to have been confusion in the case between fraud in fact and fraud in law, it is perhaps proper to add that our judgment, proceeding upon fraud in law, imputes fraud in fact to none of the parties.

*By the Court.* — The judgment is reversed, and the cause remanded to the court below for a new trial.