Fisk vs. Harshaw.

CHATTEL MORTGAGE: *Mortgagor permitted to retain possession and sell, etc.:
Whether instrument void as to creditors. Court and jury.*

1.  While it is the settled law of this state, that an agreement in, or contemporaneous with, a chattel mortgage, that the mortgagor may remain in possession, sell the goods, and apply a part of the proceeds to his own use, renders the instrument void as against creditors *(Blakeslee v. Ross-*

*man*, 43 Wis., 116, and previous cases there cited), yet the mere fact of leaving a stock of goods in the mortagor's possession, with instructions to go on and sell as usual, and make remittances to the mortgagee, though proper evidence to go to the jury, in connection with other facts, upon the question of fraudulent intent, does not of itself amount to fraud. *Cotton v. Marsh*, 3 Wis., 221.

2. The mortgage in this case not being void on its face, and the court below having found as a fact that it was taken without any intent to hinder, delay or defraud creditors, this court affirms the judgment, in the absence of any preponderance of evidence against such finding.

[TAYLOR, J., dissents, holding that the evidence shows clearly an understanding between mortgagors and mortgagee when the mortgage was given, that the former were to retain possession, sell and appropriate a part of the proceeds to their own use.]

APPEAL from the Circuit Court for *Winnebago* County.

Action for the taking and conversion of goods. Defendant had seized the goods on an execution against the property of Masse & Besnah; and plaintiff claimed them as mortgagee. The facts found by the circuit court were substantially as follows: On and prior to November 2, 1876, Masse & Besnah were wholesale and retail liquor dealers in Oshkosh; and before that day, they had made a compromise with all their creditors except Bryce & Smith, and had give composition notes, at three and six months, indorsed by the present plaintiff. To secure himself upon such indorsement, plaintiff took a mortgage of the stock in trade and certain other personal property of Masse & Besnah, conditioned for the payment by the latter of such composition notes on their maturity. The mortgage contained a clause empowering the mortgagee to take possession whenever he should think proper. When these transactions occurred, plaintiff understood that the compromise thus made extended to all of Masse & Besnah's creditors. After the giving of such mortgage, Masse & Besnah remained in possession of the property, and continued their business, purchasing new stock, and selling from both the old and new, with plaintiff's knowledge; and they kept no separate account of receipts arising from the sales of the mortgaged stock and those arising from sales of stock subsequently acquired; and out of the proceeds of the sales they paid their business and

family expenses. Before defendant's seizure of the goods, plaintiff had paid out divers sums in payment of the notes so indorsed by him, and $800 of the amount had not been refunded to him by the mortgagors. In September, 1877, Bryce & Smith recovered a judgment against Masse & Besnah for $342.32; and in October following, defendant, as sheriff, on an execution upon such judgment, seized the goods here in dispute, being a part of Masse & Besnah's stock in trade included in the mortgage, and refused to deliver them, on demand, to plaintiff as mortgagee. Plaintiff received said chattel mortgage in good faith, without any intent to hinder, delay or defraud creditors of the mortgagors; and the latter executed the mortgage in good faith to enable them to carry out their compromise with creditors, and without any intention to hinder, delay or defraud their creditors.

On these facts, the court held the mortgage valid, and rendered judgment in plaintiff's favor for the assessed value of the property, and interest.

Defendant excepted to the finding as to the good faith of the mortgagors; and also, by their exceptions, insisted that the following facts should have been found: 1. That there were other creditors, besides Bryce & Smith, with whom Masse & Besnah did not compromise. 2. That Masse & Besnah continued to add to and sell from the mortgaged stock until the same was seized by defendant. 3. That their acts in neglecting to keep separate accounts as to the old and new stocks, and in applying the proceeds of both indiscriminately to the payment of their business and household expenses, and debts prior and subsequent to the mortgage, were all done with plaintiff's knowledge and consent. 4. That at the time of making the mortgage, it was understood and agreed between the mortgagors and the mortgagee, that the former should remain in possession and carry on the business in the manner in which it was actually carried on. 5. That the indebtedness upon which Bryce & Smith's judgment was recovered, was for goods forming part of the mortgaged stock.

Defendant also excepted to the legal conclusions of the court, and appealed from the judgment.

For the appellant, a brief was filed by *Hooper & Buxton*, and the cause was argued orally by *Mr. Hooper*.

*Gabe Bouck*, for the respondent.

ORTON, J. In *Cotton v. Marsh*, 3 Wis., 221, this court decided that leaving the goods mortgaged in possession of the mortgagor, with instructions " to go on and sell as usual, and make remittances to the mortgagees," "did not of itself amount to fraud, but was a fact very proper to be left to the jury in connection with the question of fraudulent intent." In the subsequent cases of *Place v. Langworthy*, 13 Wis., 629, *Steinart v. Deuster*, 23 id., 136, and *Blakeslee v. Rossman*, 43 id., 116, it is held, in effect, that an agreement in the mortgage itself, or contemporaneous with it, that the mortgagor should remain in possession of the goods and dispose of them or their proceeds, in whole or in part, for the benefit of himself or of his family — or, as the chief justice uses the language in the last case, " to sell and apply the proceeds, or any part of them, to his own use," — is " fraudulent and void in law, as against creditors." The reason why such a mortgage is fraudulent *per se*, is well stated by Mr. Justice COLE, in *Place v. Langworthy:* " Such a provision is directly calculated to hinder, delay and defraud creditors, . . . thus placing the stock in trade beyond the reach of creditors."

Whatever may be the authorities elsewhere, upon these questions (and they are not always uniform), the law in respect to mortgages of this character is settled by these cases, so far as this state is concerned, beyond further controversy.

In this case, the circuit court found as facts, " that the plaintiff took and received said chattel mortgage in good faith, without any intent to hinder, delay or defraud the creditors of the mortgagors, Masse & Besnah," etc.; " that said Masse & Besnah executed and delivered said mortgage to the plaintiff in good faith," etc.; and " that the same was a valid chattel

mortgage," etc. We can find no such preponderance of the evidence against these findings as would justify their reversal; and there appears to be no satisfactory proof that there was any agreement or understanding between the parties to this mortgage, at the time it was given, that the mortgagors, Masse & Besnah, should dispose of the goods, or their proceeds, or any part of them, for their own use or benefit. If any such inference might be drawn, from the somewhat loose and contradictory testimony of Masse, one of the mortgagors, such inference is repelled and fully rebutted by the direct testimony of the plaintiff, the mortgagee; and there is no satisfactory evidence that the plaintiff knew or assented to any such conversion of the goods, or their proceeds, to the use of the mortgagors, after the execution of the mortgage.

The plaintiff testified, and the court found in effect, that he took the mortgage supposing that all the creditors of Masse & Besnah were provided for in the composition made with their creditors and secured by this mortgage.

The law being well settled, the case comes to this court upon these questions of fact; and we can find no good ground for disturbing the findings of the circuit court upon them.

TAYLOR, J. The evidence in this case, in my opinion, establishes the fact beyond a fair doubt, that when the mortgage in question was given, there was a mutual understanding between the mortgagors and mortgagee, that the mortgagors should not only retain the possession of the stock in trade mortgaged, but that they should go on with their business the same as before, buying and selling, and appropriating the proceeds of the sales for the support of their families, the expenses of the business, and the purchase of new stock; the mortgagee relying upon the promise of the mortgagors that they would pay the notes indorsed by him as they became due.

The evidence shows conclusively that this was just what was in fact done, with knowledge and without any dissent on the part of the mortgagee; and that the mortgagors failed in part to keep their promise to pay the indorsed notes as

they fell due. The evidence further shows that the mortgagee permitted the mortgagors to continue their business as usual for four months or more after the last notes became payable, and consequently after there had been a breach of the condition of the mortgage, without taking possession of said stock under the mortgage, and without calling the mortgagors to any account for the goods sold, or in any way interfering with their business, until after the sheriff had levied upon the same as the goods of the mortgagors, by virtue of the execution set out in the answer.

If the evidence established the facts above stated, then, according to the decisions of this court, the mortgage was fraudulent and void in law as to the creditors of the mortgagors.

In *Place v. Langworthy*, 13 Wis., 629, it was held that a mortgage was upon its face fraudulent and void in law as against the creditors of the mortgagors, which contained the following provisions: "Provided that if I, the said James Harshaw [mortgagor], from and after the date hereof, shall apply the entire proceeds arising from the sale of my said stock of goods in the ordinary and regular order of retail trade, and remaining after deducting therefrom all necessary stock and business expenses, and the expenses of myself and family, to the payment of the said $4,142.97, as fast as such proceeds shall come into my hands in money or otherwise, these presents shall be void; and it is hereby fully and expressly agreed that I shall be at liberty to continue my business and retail trade with said stock of goods as heretofore, without interruption from said James R. and E. B. Place, or their assigns, so long as I shall faithfully apply the proceeds aforesaid, in manner aforesaid."

In *Blakeslee v. Rossman*, 43 Wis., 116, it was held that a chattel mortgage upon a stock of goods, accompanied by a contemporaneous written agreement by which the mortgagor agreed to deposit with W. C. Allen, of Neilsville, Clark county, Wisconsin, in the name of A. W. Thayer & Co. (the mortgagees), one-half of the proceeds of notes and accounts then in his possession, amounting to about $5,000, to be ap-

plied in payment of said indorsed notes, and also further agreed to deposit with C. W. Allen weekly one-half of all the proceeds from the sale of the goods in said store, and render a full statement of said notes and deposits to said second party every week, was also fraudulent and void in law upon its face. In that case, it will be seen that there was no express provision in the written agreement, as to what should be done with the half of the proceeds of sales not agreed to be deposited for the benefit of the mortgagees; and yet the court held that there was an implied agreement, upon the face of the contract, that such other half was to be at the absolute disposal of the mortgagor; and that the fact that it was so at his disposal rendered the mortgage void in law; and it refused to permit parol evidence to be given to show that it was to be applied to pay the expenses of the business, and to buy new stock. In *Steinart v. Deuster*, 23 Wis., 136, which was also the case of a mortgage upon a stock of goods, it was held that an oral agreement between the mortgagor and the mortgagee, that the mortgagor was to remain in possession of the goods and sell the same in the regular course of his business, as if no mortgage had been executed, and apply the proceeds to his own use in the support of his family and otherwise, renders the mortgage fraudulent and void in the law, as to the creditors, the same as if the agreement had been made a part of the mortgage itself. In that case, the mortgagor testified that there was such a parol agreement; the mortgagee testified that there was not, but he admitted that the business was carried on, the goods sold and the proceeds appropriated by the mortgagor in the same manner after the execution of the mortgage as before, without objection and with full knowledge on his part. Upon this state of the evidence, this court held that it was error for the circuit court to submit to the jury the question of good faith on the part of the mortgagee at the time of loaning his money and receiving his mortgage.

In *Oliver v. Town*, 28 Wis., 328, this court approved of the following charge given to the jury by the circuit judge, with a strong intimation that the instruction was too favorable to

the mortgagee: "Should you find that the agreement was as above stated, that the mortgagor should sell and account for, and pay over to the mortgagee, the money received on such sales, and that the evidence further shows that, after the mortgage was given, the mortgagor went on and sold the mortgaged goods, and conducted the business as before the mortgage was given, and as though there was no mortgage, and, instead of paying over the money to the mortgagee, applied it to the support of his family, the purchase of other goods, the payment of his employees and his other creditors, and that this was done with the knowledge and assent of the mortgagee, then such subsequent conduct of the mortgagor, assented to by the mortgagee, would be strong evidence tending to prove the transaction fraudulent and void as to the creditors of the mortgagor, unless it is explained in some way so as to satisfy you of the good faith of the mortgagee." The circuit judge, before giving the above quoted instruction, had instructed the jury that if the mortgage was given to secure an honest debt, with an agreement that the mortgagor should remain in possession and sell the goods mortgaged, and pay over the proceeds of the sales to the mortgagee, such agreement would not of itself render the mortgage fraudulent and void as to creditors. In that case, although the mortgagee had taken actual possession of the mortgaged stock before the same were attached by a creditor, the jury found a verdict in favor of the creditor, and such judgment was affirmed by this court. In *Butts v. Peacock*, 23 Wis., 359, it was held that "taking a chattel mortgage for more than the present indebtedness of the mortgagee, to cover future advances, from a debtor known to be in failing circumstances and to be pressed by his creditors, is conclusive evidence of an attempt to hinder and delay those creditors, because such is the natural and necessary effect;" and that in such case it was the duty of the court to instruct the jury, that, as a matter of law, the mortgage was fraudulent and void as to creditors.

These authorities settle the question, so far as this court is concerned, that the question of fraudulent intent in the giving

and taking of a chattel mortgage, is not in all cases a question of fact to be determined by a jury, but that, upon a certain admitted or proved state of facts, the court must, as a question of law, determine the mortgage fraudulent and void as to the creditors of the mortgagor.

The case of *Blakeslee v. Rossman, supra,* was like the case at bar in most of its circumstances. It was a mortgage given upon a stock of goods to secure the mortgagees for their indorsement of notes of the mortgagors, given upon a compromise with his creditors. The only difference between the cases was, that in that case the objectionable agreement as to the manner of disposing of the proceeds of the mortgaged goods was in writing, and in this case they rested in parol; in that case, the mortgagee took possession immediately upon the mortgagors' making default, and before the goods were seized by the creditors, and in this, no possession was taken by the mortgagee, though default had been made for four months and more, and no claim was made to the possession until after the creditors had seized the same in execution.

In the case at bar, the undisputed evidence shows conclusively that the mortgage was given, amongst other things, upon a stock of goods in the place of business of the mortgagors in the city of Oshkosh, to secure the mortgagee against his contingent liability as indorser upon certain notes given by the mortgagors upon a compromise with their creditors; that, after the mortgage was given, the mortgagors went right on with their business as before, selling, and buying with the proceeds of the sales other goods to keep up the stock, supporting their families and paying the expenses of the business out of such proceeds, and applying some of such proceeds to the payment of a part of their indorsed notes; that they kept no separate account of the sales of the mortgaged goods, and rendered no account thereof to the mortgagee, doing in all things in fact as though no mortgage existed; and, as the evidence shows ·that the mortgagee was well acquainted with the business of the mortgagors, was frequently in their place of business and dealing with them, and from the fact that he knew the notes

he indorsed were notes given upon a compromise of their debts, and that presumably, therefore, they had no other means of supporting themselves and their families, except the proceeds of their sales and business, it must be presumed that he knew they were appropriating a portion of such proceeds to the support of their families. He admits that he knew they were buying other stock with a part of the proceeds, and says he supposed it was necessary to keep up the stock. The evidence further clearly shows that the mortgagee permitted this state of things to continue for several months after he knew they had failed to pay a part of the indorsed notes, without in any way interfering with their business until after the goods were attached by the creditors of the mortgagor.

In this state of the case, it seems to me like ignoring the natural effect of evidence, to hold that the facts proved do not establish the other fact, that what was done was done under either an express or implied agreement between the parties that it should be so done. The mortgagee does not deny that he knew what was being done by the mortgagors. He admits that he did not in any way restrain them, or attempt so to do. And he only denies that there was an express agreement that the mortgagors should do as they did; and this denial is simply a negative answer to a question framed to limit its scope to such express agreement.

If upon such evidence a chattel mortgage can be held to be valid as against the creditors of the mortgagor, then the rule laid down in the cases of *Place v. Langworthy* and *Blakeslee v. Rossman* ought to be abolished; for the agreement, especially in the case of *Blakeslee v. Rossman*, which was made a part of the mortgage, and which was held to render it so entirely void that an actual possession of the goods by the mortgagee under it was held to be void, also, as against creditors, was not nearly as obnoxious to the charge of fraud as the doings of the parties in this case. If a mortgagee may knowingly permit the mortgagor to do with the mortgaged property what would make his mortgage fraudulent and void as to creditors if he had expressly agreed to the doing thereof, and yet insist upon

the validity of his mortgage security, the rule established by the decisions of this court will be but a weak defense against fraudulent mortgages.

To my mind, the evidence was ample to bring the case within the rule established by this court, which declares every chattel mortgage fraudulent in law as to creditors when there is either a written or verbal agreement between the mortgagee and mortgagor that the mortgagor may sell the mortgaged property and apply any portion of the proceeds of the sales to his own use, and that in such case no amount of evidence that the mortgage security was taken in good faith to secure an honest debt, and without intent to hinder or delay creditors, will avail the mortgagee. I come to this conclusion with greater confidence, for the reason that the very able counsel for the respondent was less confident in his argument that the case did not come within the rule as laid down by this court, than he was in attacking the rule itself as unsound and in violation of our statute upon that subject.

Upon the evidence, I am of the opinion that the judgment in favor of the plaintiff should be reversed, and the cause remanded with direction to the circuit court to enter judgment for the defendant.

*By the Court.* — The judgment of the circuit court is affirmed, with costs.

RYAN, C. J., took no part.

A motion by the respondent for a rehearing was denied.